DAVIS, Director General, v. DITTMAR et al.

(Circuit Court of Appeals, Second Circuit. March 2, 1925.)

No. 251.

1. **Shipping ⊕⧟132(5)—Evidence of circumstances held sufficient to establish unseaworthiness of barge furnished.**

Evidence as to weather conditions and other circumstances under which barge furnished under contract for transportation of coal leaked and sank with load *held* sufficient to establish claim of unseaworthiness.

2. **Shipping ⊕⧟121(1)—Under contract, risk of unseaworthiness of boat not assumed by shipper.**

Under contract for transportation, boat furnished to be staunch and strong, there was no assumption of risk of unseaworthiness by shipper.

3. **Shipping ⊕⧟122—Carrier not relieved of liability by default of third party in loading.**

One who contracted to carry coal for libelant was not relieved from breach of his contract to indemnify libelant for any loss of coal from unseaworthiness of boat, because of any fault of coal dock company, in no wise connected with libelant, in loading barge when it was discovered that she was leaking.

4. **Contracts ⊕⧟187(1)—Shipper held entitled to recover in equity of shipowner, as having given security to charterer, for breach of charterer's covenant to carry in seaworthy boat.**

Where D. contracted to transport coal for libelant, covenanting that boat should be seaworthy and to indemnify libelant for any loss of coal from unseaworthiness of boat, and D. thereafter chartered boat from respondent to carry out such contract, by charter covenanting that the boat should be seaworthy, D. being bankrupt, libelant could recover of respondent for loss of coal through unseaworthiness of the boat, as respondent's covenant to D. may be considered as security for D.'s obligation to libelant, that is, for execution of D.'s covenant to libelant, within the rule that a creditor may sue in equity a person who has, by contract, given security to the creditor's debtor for the debt.

Appeal from the District Court of the United States for the Southern District of New York.

Libel by James C. Davis, as Director General of Railroads, against W. Drew Dittmar. The McClellan Transportation Company was petitioned in under the fifty-sixth rule. Decree for libelant against the McClellan Transportation Company, the impleaded respondent, and it appeals. Affirmed.

Macklin, Brown & Van Wyck, of New York City (Horace L. Cheyney, of New York City, of counsel), for appellant.

Charles M. Sheafe, Jr., of New Haven, Conn. (William L. Barnett and Edward R. Brumley, both of New York City, of counsel), for appellee.

Before HOUGH, MANTON, and HAND, Circuit Judges.

MANTON, Circuit Judge. On June 13, 1919, the appellee Davis contracted with the appellee Dittmar for the transportation of coal from South Amboy to Piers 14 and 40, North River. The contract was made from June 1, 1919, prior to the date of the execution of the contract, to March 31, 1920. It provided that "all bottoms furnished by the party of the first part [Dittmar] under this agreement shall be staunch, strong, and in every way fitted for such transportation, and of a type and capacity suitable for economical handling at the aforementioned piers." And further: "In the event of any accident to coal being carried hereunder, due to unseaworthiness of boats used or negligence of those transporting the same, the party of the first part [Dittmar] agrees to indemnify and save harmless the party of the second part against and from all loss, damage, and expense in general average, as well as for any loss of such coal."

The appellee Dittmar chartered, by verbal charter, the boat Edmont to carry out this contract. She was taken to South Amboy, where she was loaded with a cargo of coal and towed to Pier 14. She leaked during the voyage, and very badly when she arrived at the pier. Thereafter she was taken to South Amboy and loaded again with six cars of coal. It was soon discovered that the leak was more serious, and she was towed into another dock and placed

on the mud. After the boat was raised and put on dry dock, it was found that two planks were started, one portside of the stern, and the other on the starboard bow. This was found to be the cause of the leak.

This libel is based upon the indemnity clause of the contract that the appellee Dittmar had failed to indemnify it against the loss which it had sustained. The decree went against the appellant, McClellan Transportation Company, and directed a dismissal of the libel against Dittmar. It appears that Dittmar was a bankrupt, and had been discharged in bankruptcy at the time the decree was entered, and therefore it was held that no decree could go against him.

[1] The appellant admitted that Dittmar chartered the Edmont about June 10, 1919, and that it was provided in said charter that the vessel was "staunch, strong, sound, and seaworthy," and that her owner would furnish "a competent captain at its own expense to perform such duties as are usually performed by masters of barges of this character." The answer admits that, while loaded with a cargo of coal at South Amboy, the Edmont took in water to such an extent that she filled and sank. The evidence is sufficient to sustain the claim that the barge was unseaworthy on June 13, 1919, when she sank. There was no collision, heavy sea, or wind. The weather was clear, and the loading was done in the usual manner. The barge leaked some on the previous trip, and leaked badly before filling completely. These two planks were evidently started while receiving an ordinary load. She was leaking on the first voyage, for it was the pumping that kept her afloat. The barge was about 18 years old, and her owner admitted that she "might have dried out a little." The starting of the planks is not explained upon any theory other than that the vessel was dried out and of insufficient strength to sustain the ordinary load thus placed upon her. This we deem sufficient to establish the claim of unseaworthiness.

[2] But it was argued that the appellee Davis had knowledge of this unseaworthiness before beginning the voyage, and accepted it with knowledge of that condition. This appellee, operating the New England Steamship Lines, obtained this boat from the appellee Dittmar, and cannot be deemed to have had such knowledge. It was a general contract to carry coal, with the right to Dittmar to use any boats that he might select. He was not the servant of the New England Steamship Lines, and therefore the appellee Davis did not accept the boat. There is no question of assumption of risk of the unseaworthiness of the barge involved. The contract was to furnish a staunch and strong boat, and it was a breach of this obligation that caused the loss.

[3, 4] It is next argued that there was fault in loading the barge when it was discovered that she was leaking; but the loading was not performed by the appellee. The loading was performed by the employees of the Eastern Coal Dock Company, which was not in any way connected with the appellee Davis. This fact did not relieve the appellant from a breach of its obligation as contracted. The petition interpleading the appellant was filed in June, 1921. At the time the appellee Dittmar was not in bankruptcy. But under the order dated December 18, 1923, it was ordered that the damages be liquidated by prosecution to final decree of this proceeding. In re Martin, 228 F. 184, 142 C. C. A. 540. And the appellee Davis may recover against the appellant here because of the agreement to indemnify the Director General. There is the agreement of the appellant to furnish the barge in seaworthy condition. There is the covenant to the appellee Davis that the boat should be seaworthy. Dittmar was adjudicated a bankrupt, and no decree may be had against him because the claim is dischargeable. But a creditor may sue in equity a person who has, by contract, given security to a creditor's debtor for the debt. Keller v. Ashford, 133 U. S. 610, 10 S. Ct. 494, 33 L. Ed. 667; Goodyear, etc., Co. v. Dancel, 119 F. 692, 56 C. C. A. 300. After Dittmar gave the covenant for a seaworthy barge, he obtained a like covenant from the appellant. This latter agreement may be considered as security for Dittmar's obligation to the appellee Davis; that is, for the execution of Dittmar's covenant to the appellee Davis.

Decree affirmed.