### THE LIZZIE D. SHAW.*

### INTERNATIONAL SALT CO., Inc., v. DIAMOND P. TRANSP. CO., Inc.

### No. 411.

Circuit Court of Appeals, Second Circuit.

Aug. 2, 1937.

*Writ of certiorari denied 58 S.Ct. 410, 82 L.Ed. ——.

Bigham, Englar, Jones & Houston, of New York City (Leonard J. Matteson and Richard F. Shaw, both of New York City, of counsel), for libelant.

Crawford & Sprague, of New York City, and Conlen, LaBrun & Beechwood, of Philadelphia, Pa. (George C. Sprague and Roy W. Chamberlain, both of New York City, George E. Beechwood and James S. Benn, Jr., both of Philadelphia, Pa., of counsel), for respondent.

Duncan & Mount, of New York City, and Lewis, Wolff & Gourlay, of Philadelphia, Pa. (Otto Wolff, Jr., of Philadelphia, Pa., of counsel), for claimant of tug.

Before MANTON, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

The libelant, International Salt Company, was the owner of a shipment of rock salt in bulk which was laden on two barges owned by the respondent Diamond P. Transportation Company (for brevity called Diamond). The barges were taken in tow by a tug owned by Maurice R. Shaw, and during the voyage one of the barges sank with a total loss of her cargo and the other sprang a leak which caused salt water damage to her cargo. For the resulting damages the libelant filed its libel in personam against Diamond and in rem against the tug. The libel against Diamond was solely in contract; it alleged delivery to the respondent in good order at Brooklyn, N. Y., for carriage to Carney's Point, N. J., "in consideration of an agreed freight," and failure to deliver in like good order at destination. The respondent's answer denied any contract with the libelant, but admitted that the cargo was laden on its barges for transportation from Brooklyn to Carney's Point pursuant to an oral contract of carriage between Diamond and James Hughes, Inc. Neither negligence of the respondent nor unseaworthiness of the barges was alleged; and the District Court made no findings on these subjects. As against the tug the libel was in tort, alleging negligent towage of the barges and abandonment of the barge Rob Roy prior to her sinking. The District Court dismissed the libel, finding that the libelant had proved no contract with the respondent and no fault on the part of the tug. The libelant has appealed from dismissal of the libel against the respondent, the respondent from dismissal of the libel against the tug.

The voyage from Brooklyn to Carney's Point was the last stage of a carriage that originated at Detroit, Mich., under a through contract of carriage made by the libelant with National Motorship Corporation (hereafter called National). This contract was not put in evidence, but it does appear that the libelant paid freight to National for the entire transportation. National brought the shipment (1509 tons of rock salt) to Brooklyn upon two motor vessels, and employed James Hughes, Inc., to provide transportation from there to Carney's Point at the rate of 70 cents per ton. James Hughes, Inc., employed Diamond under an oral contract to carry the salt upon its barges Rob Roy and Howard E. The terms of this contract were also not proved, although it was shown that James Hughes, Inc., paid Diamond at the rate of 65 cents per ton for the salt transported on the Howard E., and paid no freight on cargo laden on the Rob Roy, which was lost. The Howard E. carried 500 tons, the Rob Roy 1,009 tons. After the salt had been transferred by National's stevedores from the motor vessels into the barges, the latter were taken to Red Hook Flats, whence they set out in tow of the tug Lizzie D. Shaw about 4 a. m. on October 4, 1933. The tow was made up tandem, with the Rob Roy leading. The voyage proceeded without incident until about 11 o'clock, when the Rob Roy began to leak. Her captain signaled to the tug by means of a mechanical horn, but the signal was not heard. At first the Rob Roy's pumps were able to hold the leak, but

about 1:30 p. m. one of them became choked with salt. The captain again signaled, and again the signal was not heard by the tug. Around 3 o'clock the other pump became clogged, and the barge, after sounding seven short blasts on the horn, which elicited no response from the tug, flew a distress signal which the tug observed. She came back to the Rob. Roy, whose master, without instructions from the tug captain, cast off the hawsers, dropped an anchor, got into the lifeboat with the other two members of the barge's crew, and made his way to the tug. He reported that his vessel would sink before midnight and he refused to go back aboard her. About 6:30 p. m. the tug-captain concluded that nothing could be done to save the Rob Roy, and he proceeded with the Howard E. back to Sandy Hook, where they anchored at about 1:30 a. m. on October 5th. On this return trip the cargo of the Howard E. sustained damage from leakage. The Rob Roy sank at 5 a. m. on October 5th, as reported by a Coast Guard vessel. There were no weather conditions to account for the excessive leaking of either barge, if she were seaworthy. The wind from the northeast never got above force 5 of the Beaufort scale, and the sea was moderate.

■ The libelant's appeal raises the question whether an owner of cargo shipped under a through contract of carriage and damaged while in the possession of a subcarrier can maintain a libel in personam ex contractu against the latter. The libelant contends that Diamond is liable ex contractu for breach of the implied warranty of seaworthiness contained in its oral contract with James Hughes, Inc. As already stated, no proof was made of the terms of such contract. How a libelant can hope to recover on a contract, even if made for its benefit, without offering proof of the terms of the contract sued upon, passes comprehension. But, even if this hurdle were jumped, the fact remains that the contract between the Hughes corporation and the respondent was not made for the libelant's benefit. The Hughes corpora-

tion, having contracted with National to provide carriage at a freight rate of 70 cents per ton, for its own profit procured the respondent to do the work for 65 cents per ton. Recent decisions of this court are clear authority that the libelant may not recover on the respondent's contract with James Hughes, Inc. The Castleton (C.C.A.) 64 F.(2d) 11, 13; Flat-Top Fuel Co. v. Martin (C.C.A.) 85 F.(2d) 39, 41, certiorari denied 299 U.S. 585, 57 S.Ct. 110, 81 L.Ed. 431. The case of New Jersey Steam Nav. Co. v. Merchants' Bank, 6 How. 344, 12 L.Ed. 465, is not to the contrary. There Harnden, who made the contract of carriage, was treated as the bank's agent and the bank was allowed to sue in its own name as the undisclosed principal. 6 How. 344, at page 380, 12 L. Ed. 465. Here the Hughes corporation, whose contract the libelant seeks to enforce, was not employed by the libelant; there was no agency. Although the respondent owed no contractual duty to the libelant to have the barges seaworthy, it did owe a duty not to cause damage to the libelant's property by the negligent use of its vessels, and this demanded reasonable care to have them safe for the carriage of cargoes which the respondent knew were to be laden on them. Flat-Top Fuel Co. v. Martin, 85 F.(2d) 39, 41 (C.C.A.2). There it was held that the unexplained sinking of a barge established a prima facie case of negligence in this respect. In the case at bar, however, the libel contains no charge of negligence by Diamond and no allegation of unseaworthiness of its barges. There was no request to amend, and the argument was presented solely on the theory of contractual liability. That failing, dismissal of the libel as against the respondent must be affirmed.

■ The libelant has not appealed from dismissal of its libel as against the tug. Whether this was correct we need not consider. Since we affirm dismissal as to the respondent, its appeal from dismissal as to the tug has become moot.

The decree is affirmed on the libelant's appeal; the respondent's appeal is dismissed.