275 F.2d 865
 NEW YORK CENTRAL RAILROAD COMPANY, Appellee,
v.
NEW YORK, NEW HAVEN & HARTFORD RAILROAD COMPANY, Appellant,
New York Dock Railway, Respondent, and
New York, New Haven & Hartford Railroad Company, Respondent-Impleaded.
 No. 205.
 Docket 25775.
 United States Court of Appeals Second Circuit.
 Argued February 10, 1960.
 Decided March 14, 1960.
 
 Robert M. Peet, New York City, for appellant.
 Jerome H. Shapiro, Gerald E. Dwyer, New York City (William F. McGinn, New York City, of counsel), for appellee.
 Before HAND and MOORE, Circuit Judges, and J. JOSEPH SMITH, District Judge.
 HAND, Circuit Judge.
 
 
 1
 This is an appeal from a decree in the admiralty of Judge Edelstein in the Southern District of New York, awarding damages to the New York Central Railroad against the New York, New Haven and Hartford Railroad for the loss of railroad cars and their contents. The facts were as follows. A number of railroad cars had arrived at the "Central's" yard at Weehawken, loaded with freight and destined for Brooklyn. As the cargo on the cars was perishable, it was important to move them from Weehawken, and one, Korab, an official of the "Central" called up White, an official of the respondent, the New York Dock Railway, and asked White if he had any carfloats available to carry the cars to Brooklyn. White answered that he had none, and Korab then said to him that the "New Haven" had two floats at Weehawken, one of which White "might be able to hire" for the purpose. Shortly thereafter White told Korab to "Go ahead and load one of the New Haven floats," which White had meanwhile chartered from that railroad. The "Central" loaded the float at a "float bridge," towed her to Pier 8 at Weehawken, and left her lying there at about noon on October 24. A serious storm arose that afternoon during which the float "buckled" about 130 feet from her stern and four out of twelve of the loaded cars rolled off and sank.
 
 
 2
 The judge found that when the "New Haven" chartered ("demised") the float to the "Dock Company," the float was unseaworthy from "general wasting away and corrosion of her hull over a substantial period of time." In addition he found that there were two holes in her hull four or more square inches in area that were under water when she was loaded with twelve cars, although that was not more weight than she was designed to carry. The "Central" had sued, not only the "New Haven" but the "Dock Company," but the Judge dismissed the libel against the "Dock Company"; and the "Central" did not appeal.
 
 
 3
 The "New Haven" violated its warranty to the "Dock Company" of the seaworthiness of the float; and, when the charterer of a ship is liable to a cargo owner, the cargo owner may hold the shipowner on his warranty to the charterer. Davis v. Dittmar, 2 Cir., 6 F.2d 141; S. C. Loveland Co. v. Eastern States Farmer's Exchange, 3 Cir., 92 F.2d 180; W. R. Grace & Co. v. Charleston Lighterage & Transfer Co., 4 Cir., 193 F.2d 539; Connecticut Adamant Plaster Co. v. James McWilliams Blue Line, Inc., 2 Cir., 253 F.2d 785. Indeed, in Davis v. Dittmar, supra, we held the shipowner, although the charterer, Dittmar, who had given a warranty to the cargo owner, had been discharged in bankruptcy. We held that the ship's warranty was a security for the charterer's warranty, which for that reason survived the discharge. In all the other decisions there was a circuity of action because the charterer was liable to the cargo owner for his failure to carry safely, and the loss was caused by the shipowner's breach of warranty to the charterer. The charterer was liable, but in all cases only secondarily.
 
 
 4
 In the case at bar, as we have said, the "Central's" libel was dismissed as against the "Dock Company," so that the situation was not within the doctrine we have just mentioned. Moreover, the libel charged both the "New Haven" and the "Dock Company," not with any breach of warranty, but only with "negligence * * * in delivering to `Central' a carfloat which was unfit for the purpose intended." That, if proved, created a direct liability from the "New Haven" to the "Central," regardless of any warranty. Flat-Top Fuel Co. v. Martin, 2 Cir., 85 F.2d 39; The Lizzie D. Shaw, 2 Cir., 92 F.2d 65. The difficulty we find in the case at bar is that the judge made no finding that the "New Haven" was negligent. True, his fifth finding was, as we have said, that the damages were "caused by the unseaworthiness of the carfloat, by the lack of maintenance and the general wasting away and corrosion of her hull over a substantial period of time prior to the sinking"; but that was not a finding that it was the "New Haven's" negligence that allowed her to become unseaworthy, and in any event it is directly contradicted by the seventh finding that there "was no proof of condition of the No. 50 as of October 24, 1955, when she was chartered to the "Dock Company." Moreover, the fourth finding was that "New Haven breached the warranty of seaworthiness which, pursuant to the charter, it owed to Dock Railway," which certainly suggests, though it does not actually hold, that this was the basis for the "New Haven's" liability, which was insufficient to support the decree, if, as the court held, the "Central" had no claim against the "Dock Company." On these findings we cannot hold that the "New Haven" was liable for negligence, and the cause must be remanded for further findings.
 
 
 5
 The sixth finding was that the "Central" was not negligent "in loading or mooring the carfloat," and we do not think that this was "clearly erroneous." The only obvious defect was the two small holes we have mentioned and these do not appear to us to have been enough to charge the "Central." Moreover, it was not shown that these caused the float to "buckle."
 
 
 6
 The "New Haven" has not suggested that, if its liability cannot stand upon its warranty of seaworthiness, but may stand upon its negligence in allowing the float to be used, it may limit its liability to the value of the float as was done in Flat-Top Fuel Co. v. Martin, supra (85 F.2d 39). We do not know whether this was because it supposed that its liability, if any, was under its warranty, in which event no limitation was possible. We do not now wish to foreclose either party on this issue of limitation.
 
 
 7
 The decree will be reversed and the cause remanded for further proceedings not inconsistent with the foregoing.