PARDEE, Circuit Judge
(after stating the facts). This suit is founded on a charter party which contains, among others, the following provisions:
“The bills of lading to be signed without prejudice to this charter, and any difference to be settled before vessel sails.” “The cargo or cargoes to be received and delivered according to the customs of the ports of loading and discharge.” “Charterers’ responsibility to cease when cargo is all on board and bills of lading signed, but master or owners to have an absolute lien on cargo for freight, dead freight, or demurrage.”
The bills of lading issued to the charterers and others made no reference to the charter party, and contained, among other provisions, the following:
“To be delivered from the ship’s tackle, where the ship’s responsibility shall cease.” “The goods to be discharged from the ship as soon as she is ready to unload at the quay or into hired lighters, if necessary, but at the expense and risk of owners of the goods.” “Goods to be taken delivery of as soon as they can be discharged from the steamer, the goods to be and remain at consignee’s risk or expense immediately after being placed in the lighters or on the quay.”
The evidence in the case proves a custom in the port of New Orleans, in regard to the delivery of coffee, that the ship is to unload the coffee from the vessel onto the wharf, pile it upon skids in separate lots according to the bills of lading, and there make delivery to the several consignees. The ordinances of the city of New Orleans provide that all produce, wares, goods, and other articles landed on the wharves or levees by any vessel or other water craft shall be laid as near as possible to the paved part of the levee approaching the street, so that the bank of the river and wharves be neither obstructed nor incumbered thereby, and fix 48 hours as the longest time that said produce, goods, wares, or other articles shall be allowed to remain on the wharves or landings. We find in the evidence no sufficient proof of any custom in the port of New Orleans as to the length of time that coffee, after being unloaded from a ship, shall be allowed to remain upon the wharves.
The first contention of the appellants is that the effect of the “cesser of liability” clause in the charter party is to take away all right of action by owners or charterers on the charter party when cargo is all delivered on board and bills of lading signed. The cases cited in support of this contention (Sanguinetti v. Navigation Co., 2 Q. B. Div. 238; Gullischen v. Stewart, 13 Q. B. Div. 317) are conclusive as to the proposition that, after cargo is all on board and bills of lading issued, no right of action remains by the owners of the ship against the charterers upon a charter party which contains a “cesser of liability” clause in favor of the charterers; and very properly so, because that is the exact language of the clause itself. Under the charter party in hand, charterers’ responsibility is to cease as soon as the cargo is all on board and bills of lading signed; but, conceding this, it by no means follows that the responsibility of the ship, which in the main begins when cargo is loaded on board, shall also cease, and we find no adjudged cases asserting any such *936 effect to be given such stipulation. Charter parties frequently contain important stipulations which are to be performed by the ship at the end of the voyage, and, unless it clearly appear from the contract that such stipulations are to be avoided on delivery of goods on board, no construction having that effect can be given to the cesser clause. The present charter contains a provision that goods were to be delivered according to the custom at the port of discharge, but of what use was it to insert such provision in the charter party, if all responsibility under the charter party was to cease when cargo was all on board? The same may be said of other provisions in the charter party in regard to the employment of a stevedore and the designation of wharf for unloading at the port of destination.
Appellants’ next contention is that the bills of lading, which contain no reference to the charter party, supersede all stipulations contained in the charter party in regard to .the delivery of the goods. This contention has been well examined, and, as sought to be applied in this case, we are satisfied it is not sound. "They [bills of lading] do not, as between the shipowner and the charterer, operate as new contracts or as modifying the contract in the charter party.” Carv. Carr. by Sea, 152, 159, 163; Abb. Shipp. 277; Pars. Adm. 286; Lamb v. Parkman, 1 Spr. 343, Fed. Cas. No. 8,020; The Chadwicke, 29 Fed. 521; Steamship Co. v. Theband, 35 Fed. 620; Gledstanes v. Allen, 12 C. B. 202; Faith v. East India Co., 4 Barn. & Aid. 630; Wagstaff v. Anderson, 5 C. P. Div. 177; Capper v. Wallace, 5 Q. B. Div. 166. See Leduc v. Ward, 20 Q. B. Div. 475, 479. This disposes of the first three assignments of error.
The fourth and last assignment of error is that the court below erred in decreeing upon the amended libel. The amendment is not germane to the claim set forth in the original libel, and it should not have been allowed. The Oregon, 158 U. S. 186, 15 Sup. Ct. 804; The Beaconsfield, 158 U. S. 303, 15 Sup. Ct. 860. The Charles Morgan, 115 U. S. 70, 5 Sup. Ct. 1172, treats of amendments in the appellate court, and holds that, to be allowed, they must be confined to the original subject of controversy. The decree of the district court should be amended by reducing the amount awarded to the sum of $521.90, the amount of principal and interest claimed in the original libel,—to date of decree below,—and as so amended the decree appealed from should be affirmed, the appellants to pay the costs of the district court, and the appellees the costs of appeal, including the costs of transcript. So ordered.