Application of MINISTRY OF COM-
MERCE, STATE PURCHASES DIREC-
TORATE OF ATHENS, GREECE, Peti-
tioner,

v.

MARINE TANKERS CORPORATION,
Respondent, to compel Respondent
to arbitrate a controversy.

United States District Court
S. D. New York.

Nov. 23, 1960.

Hill, Rivkins, Middleton, Louis & War-
burton, New York City, for petitioner.
Barton P. Ferris and Leo P. Cappelletti,
New York City, of counsel.

Cardillo & Smith, New York City, for
respondent. Donald F. Mooney, New
York City, of counsel.

PALMIERI, District Judge.

Petitioner, as charterer of respond-
ent's vessel, has brought this motion pur-
suant to section 4 of the federal Arbitra-
tion Act, 9 U.S.C. § 4, to compel arbitra-
tion of a claim for cargo damage.[1]

---

I. The federal Arbitration Act, 43 Stat.
883, 9 U.S.C. §§ 1 et seq. provides for
specific enforcement of agreements to ar-
bitrate in "maritime" transactions. Sec-
tion 4 of the Act enables "a party ag-
grieved by the alleged * * * refusal

of another to arbitrate under a written
agreement for arbitration" to call upon
the district court to order arbitration
where, as here, the subject matter of the
controversy falls within the admiralty ju-
risdiction of the court. See The Anacon-

Petitioner asserts a claim for seawater damage to a cargo of corn carried aboard respondent's vessel in February and March of 1958 from Baltimore, Maryland, to Piraeus, Greece. Relying on the typewritten "special provision" for arbitration contained in the voyage charter party signed by petitioner and respondent on January 8, 1958,[2] petitioner wrote to respondent on Nov. 23, 1959, demanding arbitration of the claim. Respondent declined to name its arbitrator and refused to proceed with arbitration.

■ Respondent concedes execution of the charter party with its provision for arbitration in New York but contends that the obligations of the parties are no longer governed by the provisions of that instrument. According to respondent, the reference to arbitration contained in the subsequently issued bills of lading[3] supersedes the clause contained in the charter. Under the bill of lading provision, petitioner's claim would be time-barred since petitioner failed to demand arbitration in London within the specified three month period.[4]

■■ In cases in which the relevant provisions of the charter and bill of lading are inconsistent, the courts have looked to the identity of the contending parties to determine which document controls. If a transferree of the bill of lading is one of the parties, the bill and not the charter is treated as the governing instrument. Since the transferee of the negotiable bill is not a party to the charter, that original contractual docu-

da v. American Sugar Refining Co., 1944, 322 U.S. 42, 45, 64 S.Ct. 863, 88 L.Ed. 1117; Industrial y Frutera Colombiana S. A. v. The Brisk, 5 Cir., 1952, 195 F. 2d 1015. See also Kulukundis Shipping Co, S/A v. Amtorg Trading Corp., 2 Cir., 1942, 126 F.2d 978.

2. A typewritten rider follows the standardized (Baltimore Berth Grain Charter Party (Form C)) printed portion of the charter. The rider states, in pertinent part:

"The Following Special Provisions are a Rider to and Form a Part of S.S. 'Producer' C/P dated 1/8/58"

"25. All bills of lading issued shall be subject to all the terms and conditions of this charterparty, and shall also include usual protective clauses as follows: U.S.A. Clause Paramount, New Jason Clause, New Both-to-Blame Collision Clause, P & I Bunker Deviation Clause, Chamber of Shipping War Risk Clauses Nos. 1 and 2, and New York Produce Exchange Arbitration Clause."

*"Arbitration Clause New York:*

"Should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three persons at New York, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final, and for the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial men."

3. Printed paragraph 10 of the three bills of lading (Berth Term Grain Bill of Lading, Baltimore Form C) covering the shipment provides:

"10. All terms, conditions and provisions of the Strike, Lighterage Clause No. 26 and Arbitration Clause of the 'Centrocon' charterparty to apply."

The arbitration Clause of the 'Centrocon' charter party provides:

"All disputes from time to time arising out of this contract shall, unless the parties agree forthwith on a single Arbitrator, be referred to the final arbitrament of two Arbitrators carrying on business in London who shall be Members of the Baltic and engaged in the Shipping and/or Grain Trades, one to be appointed by each of the parties, with power to such Arbitrators to appoint an Umpire. Any claim must be made in writing and Claimant's Arbitrator appointed within three months of final discharge and where this provision is not complied with the claim shall be deemed to be waived and absolutely barred. No award shall be questioned or invalidated on the ground that any of the Arbitrators is not qualified as above, unless objection to his acting be taken before the award is made."

Each bill of lading also bears this typewritten endorsement:

"In Accordance With Terms, Conditions and Exceptions of Charter Party Dated New York January 8, 1958."

4. The arbitration clause of the charter party contains no express time limitation. Under the applicable precedent, a demand within a reasonable time would be adequate. Son Shipping Co. v. De Fosse & Tanghe, 2 Cir., 1952, 199 F. 2d 687.

ment does not constitute the contract of carriage upon which his rights are based.[5] See The Titania, 2 Cir., 1904, 131 F. 229; Chilean Nitrate Sales Corp. v. The Nortuna, D.C.S.D.N.Y.1955, 128 F.Supp. 938, 940; Gilmore and Black, The Law of Admiralty 109, 194 (1957). On the other hand, in cases where the bill of lading remains in possession of the charterer himself, i. e., in a controversy between charterer and shipowner, the bill of lading has been regarded as a mere receipt which does not supersede the charter provisions. See The Iona, 5 Cir., 1897, 80 F. 933; The Chadwicke, D.C. S.D.N.Y.1887, 29 F. 521; Gilmore and Black, op. cit. supra at 193–197; Poor, Charter Parties 66 (4th ed. 1954).

▇ Respondent accepts these general principles but points out that the parties to a charter, intending to modify the terms originally agreed upon, may express such modifications in the bill of lading given to the charterer. If the court finds such an intention, it will give effect to the variations embodied in the bill of lading. See The Eliza Lines, C.C.D.Mass.1894, 61 F. 308, 326, affirmed 1 Cir., 1904, 114 F. 307, reversed on other grounds 1905, 199 U.S. 119, 26 S.Ct. 8, 50 L.Ed. 115; The Caledonia, C.C.D. Mass.1890, 43 F. 681, affirmed 1895, 157 U.S. 124, 15 S.Ct. 537, 39 L.Ed. 644; Scrutton, Charterparties 53–55 (16th ed. 1955).

▇ Respondent relies upon the existence of the inconsistent arbitration provisions, the acceptance of the bills by petitioner, and the presence of a cesser clause[6] in the charter to establish its claim with respect to the parties' intention. I find that these factors are insufficient to establish the proposition urged by respondent. Under the circumstances presented here, petitioner's contention, that as between charterer and shipowner the bills of lading were regarded as mere receipts for the goods, is the more reasonable interpretation of the parties' understanding. The charter is not a preliminary memorandum; it contains a full statement of the "special provisions" of the agreement between the parties. Cf. The Caledonia, supra 43 F. at page 685. The "special provisions" chosen for the charter appear to have been the subject of some bargaining between the parties or their agents. See generally Gilmore and Black, op. cit. supra at 174 et seq. By contrast, the reference to arbitration in the bills of lading appears in the small print portion of standard form documents. In addition to the essential information identifying the nature and character of the shipment, the bills of lading, drafted with a view toward negotiability, contain only this typewritten insertion:

"Freight Prepaid"

"In Accordance With Terms, Conditions and Exceptions of Charter Party Dated New York January 8, 1958."

The inconsistency within the bills themselves by reason of this express incorporation of the terms of the charter party is a further factor militating against a holding that the bills were intended to modify the charter provision with respect to arbitration. See The Chadwicke, D.C.S.D.N.Y.1887, 29 F. 521.

---

5. Bills of lading in voyage charter carriage may, and often do, incorporate by reference the terms of the charter party. See Son Shipping Co. v. De Fosse & Tanghe, supra; Gilmore and Black, The Law of Admiralty 192–95 (1957).

6. " * * * Charterers' liability under this Charter to cease on cargo being shipped * * *."

This standard clause substitutes the security of a lien on the goods for the personal liability of the charterer. Whatever impact such a clause may have on the charterer's obligations, it does not release the shipowner from his responsibilities under the charter. See The Iona, 5 Cir., 1897, 80 F. 933. Moreover, as construed by the courts, the cesser clause does not immunize even the charterer from all personal liability once the cargo is loaded. The charterer remains liable for harm resulting from his own breach of duty. See Steamship Rutherglen Co. v. Howard Houlder & Partners, 2 Cir., 1913, 203 F. 848, 850–851; Gilmore and Black, op. cit. supra at 190–92, 195–97.

In sum, on the basis of the information before me I am unable to conclude that the parties intended the "Centrocon" arbitration clause to regulate their obligations with respect to the procedure for determination of claims such as the one asserted by petitioner. Accordingly the motion to compel arbitration pursuant to the procedure outlined in the charter provision is granted.[7] Respondent is directed to name its arbitrator and to proceed with arbitration as demanded by petitioner.

So ordered.

---

7. Upon the argument of this motion respondent represented to the court that its "Answer and Counterclaim" should be deemed to serve the function of an affidavit only and that no affirmative relief was sought thereon.