**VANOL USA, INC., Plaintiff,**

v.

**M/T CORONADO, her engines, tackle, boilers, etc., Keystone Shipping Co., Margate Shipping Co. and Manufacturers National Bank of Detroit, Defendants.**

**No. 86 Civ. 3520 (RWS).**

United States District Court,
S.D. New York.

June 30, 1987.

Chalos, English & Brown, P.C., New York City, for plaintiff; by Craig S. English, of counsel.

Walker & Corsa, New York City, for defendant; by Richard A. Corwin, Constantine W. Papas, of counsel.

## OPINION

SWEET, District Judge.

Defendants Keystone Shipping Co., Margate Shipping Co. and Manufacturers National Bank of Detroit (collectively, "defendants") move this court for an order pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure dismissing the complaint brought against defendants by Vanol USA, Inc. ("Vanol") on the grounds that plaintiff Vanol has failed to state a cause of action against defendants for which relief can be granted. Alternatively, defendants seek to stay this action pending arbitration in London pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* Defendant Margate Shipping Company moves this court for an order pursuant to Rule 4(j) and 12(b)(6) dismissing the action *in rem* against the M/T CORONADO. For the reasons stated below, the motion is granted.

Since facts arising out of the documents submitted are set forth in the affidavits supporting the motion as to the relationship between the parties, namely the charterparty between Vanol and Shell International Petroleum Company, Ltd. ("Shell"), the motion must be viewed pursuant to Fed.R.Civ.P. 12(c) as converting to a motion for summary judgment under Rule 56. Plaintiff thus is given twenty (20) days to submit any additional facts to supplement its submission. Based on the affidavits submitted thus far, no factual controversy has been presented. For the reasons stated below, the motion is granted.

### The Facts

This action arises out of an alleged shortage of vacuum gas oil carried aboard the M/T CORONADO from LaCoruna, Spain to Bayway, New Jersey in February of 1984 pursuant to the terms and conditions of a voyage charterparty between Vanol, as charterer and Shell as Chartered Owner dated January 26, 1984.

Vanol has brought suit against defendants claiming in its complaint breach of "ocean tanker bills of lading dated February 4, 1984" and damages of $101,000. Vanol was both the voyage charterer of the

"CORONADO" and the named "to order" consignee on a Petroliber, LaCoruna form "bill of lading" containing the identity of load port, discharge port, shipper, consignee, and description of cargo, but devoid of terms of a contract of carriage. However, the bill of lading incorporates "all the terms, conditions, liberties, and exceptions of the charterparty" governing the "rights of the parties concerned in this shipment," *i.e.*, the Vanol/Shell charterparty which provides for London arbitration.

The M/T CORONADO was fixed on a 15–year time charter between Margate as owner and Shell as charterer pursuant to a "Shelltime 3" form charterparty dated February 2, 1972. Clause 16 of the time charter entitled Shell to sublet the vessel, and Clause 13 provided that the Master, though appointed by Owner, was under the orders and direction of Shell. Shell has not been made a party to this action by Vanol.

With respect to the *in rem* action, defendants represent that the M/T CORONADO has never been arrested in the Southern District, which Vanol does not dispute. Vanol, however, says that it is likely that the CORONADO will call again in New York, which defendants have denied on information and belief through counsel's affidavit.

**The Bill of Lading is a Receipt Only**

The rights and obligations of a shipowner who has time chartered his vessel have been described as follows:

> The ship is the owner's ship, and the master and crew his servants for all details of navigation and care of the vessel; but for all matters relating to the receipt and delivery of cargo, and to those earnings of the vessel which flow into the pockets of the charterers, *the master and crew are the servants of the charterers.* (emphasis added).

*Yeramex Int'l v. S.S. Tendo*, 595 F.2d 943, 946 (4th Cir.1979) (quoting *Clyde Commercial S.S., Ltd. v. United States Shipping Co.*, 152 F. 516, 518 (S.D.N.Y.1907)).

The Petroliber bill of lading signed by the Master as agent for Shell is not a contract of carriage between defendants herein and Vanol but rather a receipt for the goods because the cargo was shipped pursuant to the terms and conditions of the voyage charterparty between Vanol and Shell making it the governing contract of carriage. Here, because Vanol was both voyage charterer and consignee, the bills of lading were in the possession of the charterer and, consequently, were merely receipts, and the rights and liabilities of the parties were governed by the terms of the charterparty. *Ministry of Commerce v. Marine Tankers Corp.*, 194 F.Supp. 161, 163 (S.D.N.Y.1960) ("where a bill of lading remains in hands of charterer, charter provisions govern"); *see also The Marine Sulphur Queen*, 460 F.2d 89, 103 (2d Cir.) (bill of lading does not serve as contract when charterparty contains terms of carriage), *cert. denied*, 409 U.S. 982, 93 S.Ct. 318, 34 L.Ed.2d 246 (1972); *North American Steel Prods. Co. v. ANDROS MENTOS*, 1969 A.M.C. 1482, 1493 (S.D.N.Y.1969).

In the instant action the Vanol/Shell voyage charterparty contains the particulars of the venture, including instructions for the proper care and handling of the cargo. Paragraphs C and D of the voyage charter set forth the voyage range, *i.e.*, "first load port to be North Spain" to "one to two same port(s) United States Atlantic Coast." The charter also provides for the carriage of vacuum gas oil and sets forth heating instructions (which, according to Vanol, play a significant role in the alleged loss). In addition, the Vanol/Shell voyage charterparty must be referred to by virtue of the inclusion in the bill of lading of the notation that "freight [is] payable per charterparty rate" which is found in paragraph F of the voyage charter. Moreover, the shipper's bill of lading was "to order of Vanol" and incorporated the terms of the Vanol/Shell voyage charterparty. The only charterparty referred to in the "bill of lading" is the one in which Vanol was voyage charterer.

In *Flat-Top Fuel Co. v. Martin*, 85 F.2d 39, 41 (2d Cir.1936), it was held that where a subcharterer:

> already has a contract of carriage with the charterer ... it cannot reasonably be supposed that he means to contract with

the shipowner for the same carriage. It is equally unlikely that the shipowner, having already contracted with the charterer, wishes to make an additional contract with the subcharterer, since he will earn no additional freight thereby from the latter.

■ A private contract of affreightment between Vanol/Shell is the only contract of carriage in the instant action, so a contract action such as this against the defendants may not go forward.

Although Vanol has cited a number of cases to defend its complaint, the authorities upon which it is relying discuss actions sounding in tort, not in contract. For instance, *New York Central R.R. v. New York N.H. & H.R. Co.*, 275 F.2d 865 (2d Cir.1960), is not a contractual failure to deliver case, but rather a negligence and seaworthiness case. Similarly, although Vanol cites *Flat-Top Fuel Co. v. Martin,* 85 F.2d 39 (2d Cir.1936), the section of the opinion to which it points deals exclusively· with a tort claim, the court having dismissed the contract claim for the reasons already discussed. Finally Vanol cites *Sunil Industries v. The Ogden Fraser,* 1981 A.M.C. 2670 (S.D.N.Y.1981) and *The Poznan,* 276 F. 418 (S.D.N.Y.1921), which are cases concerning interference in contract. As said in the *Ogden Fraser,* a vessel owner is liable for "interfering with the charterer's performance of its contract with the shipper by ordering the vessel to deviate from the charterer's intended course. This liability is based on the general theory that a third party who induces an obligor to breach a contract commits a tort against the obligee. The shipowner's liability under this theory extends only to damage attributable to the deviation and not to poor stowage or other unseaworthiness." 1981 A.M.C. at 2672.

The only *contract* terms and conditions upon which Vanol may found a cause of action for shortage/damage to cargo car-

ried during the voyage for which Vanol chartered the CORONADO are those in the voyage charterparty between Vanol and Shell, and this complaint must, therefore, be dismissed with leave granted to replead within twenty (20) days or to submit any additional facts. If no such submissions are made, judgment will be entered on notice dismissing the complaint with costs.

■ As to the *in rem* action against the M/T CORONADO, the vessel has still not yet been arrested in the Southern District. Plaintiff says that it is likely that the vessel will call at the port of New York during the pendency of this action, which, as noted, defendant has denied on information and belief through counsel.

As the court said in *International Terminal Operating Co. v. Skibs A/S Hidlefjord,* 1973 A.M.C. 2568, 2571 (S.D.N.Y. 1973), "[w]hile the court could permit the action to remain dormant until such time as *in rem* jurisdiction might be acquired, it declines in its discretion to do so." The action against the CORONADO is, consequently, dismissed.[1]

IT IS SO ORDERED.

---

**1.** Defendants have argued that Fed.R.Civ.P. 4(j) mandates that this action be dismissed because the M/T CORONADO has not been served within the 120 days that the rule allows, and cite *Blue Anchor, Inc. v. M/V EMANUEL,* 1986 A.M.C. 112 (E.D.Pa.1983), in support of the

proposition. Plaintiffs urge the court not to follow *Blue Anchor* on the grounds that the case improperly applied Rule 4(j) to maritime ac- · tions. Because the court is dismissing the case against the CORONADO on *International Terminal* grounds, it does not reach this issue.