**CARGILL B.V., Plaintiff,**

v.

**S/S "OCEAN TRAVELLER," her engines, tackle, boilers, etc., Wursata Shipping Co., Defendants.**

**No. 88 Civ. 0210 (PNL).**

United States District Court, S.D. New York.

Jan. 26, 1989.

Yorkston W. Grist, P.C., New York City, for plaintiff (David L. Mazaroli, of counsel.)

Cichanowicz, Callan & Keane, New York City, for defendants (Lawrence V. Cichanowicz, of counsel.)

## MEMORANDUM AND ORDER

LEVAL, District Judge.

Defendant moves to stay the action and compel arbitration under the Federal Arbitration Act, 9 U.S.C. § 3.

### BACKGROUND

Plaintiff sues to recover for damage to its cargo of soybeans suffered on a voyage from Louisiana to the Netherlands. On October 31, 1986, the plaintiff, Cargill B.V. ("Cargill"), a Dutch corporation, signed a charter party with defendant carrier, Wursata Shipping Co. ("Wursata"), for charter of the S/S Ocean Traveller for carriage of ore from The Netherlands to the United States and of soybeans on the return trip. The charter called for issuance of a bill of lading containing a " 'Centrocon' arbitration clause." [1] In the course of the chartered voyage, the ship took on soybeans at Reserve, Louisiana for carriage to Amsterdam. After inspection on December 9, 1986, the master issued a bill of lading which designated plaintiff as the consignee. The bill of lading stated: "All other terms, conditions and exceptions as per charter party." In addition it provided, "All terms, conditions and provisions of the ... Arbitration Clause of the 'Centrecon' charterparty ... to apply." When the cargo was discharged in Amsterdam on January 14, 1987, the soybeans had been damaged by salt water.

Cargill brought this action on January 12, 1988, naming the S/S Ocean Traveller and Wursata as defendants. It obtained jurisdiction over the vessel *in rem* by means of a letter of undertaking furnished by the underwriter. *Continental Grain Co. v. Federal Barge Lines Inc.*, 268 F.2d 240, 243 (5th Cir.1959), *aff'd*, 364 U.S. 19,

1. The clause was to state: All disputes from time to time arising out of this contract shall, unless the parties agree forthwith on a single arbitrator, be referred to the final arbitrament of two arbitrators carrying on business in London, ... one to be appointed by each of the parties, with powers to such arbitrators to appoint an umpire. Any claim must be made in writing and claimant's arbitrator appointed within nine months of final discharge and where this action is not complied with the claims shall be deemed to be waived and absolutely barred....

80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960). Wursata appeared and answered on its own behalf and on behalf of the ship. Wursata's answer reserved the affirmative defense of lack of personal jurisdiction over it. On November 2, 1988, defendants moved to compel arbitration in London and to stay the actions against Wursata and the vessel pending arbitration.

Wursata relies on the arbitration clause required by the charter party and on the Federal Arbitration Act.[2]

Cargill makes several arguments in opposition to this motion. It contends that defendant's delay effectively waived the right to seek arbitration; that the arbitration clause is void because the terms of the charter party were not adequately incorporated into the Bill of Lading; third, arbitration is barred by that the Carriage of Goods By Sea Act ("COGSA"), 46 U.S.C. App. 1300 *et seq.;* finally, Cargill argues that its arbitration agreement was with the vessel owner, not with the vessel, and is therefore not applicable to an *in rem* action against the vessel.

DISCUSSION

Federal law favors the enforcement of arbitration agreements. "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). *See Dean Witter Reynolds Inc. v. Bird,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). "[N]ational courts need to 'shake off the old judicial hostility to arbitration,' ... and also their unwillingness to cede jurisdiction of a claim arising under domestic law to a foreign or transnational tribunal." *Mitsubishi Motors Corp. v. Soler Chrysler–*

*Plymouth,* 473 U.S. 614, 639, 105 S.Ct. 3346, 3360, 87 L.Ed.2d 444 (1985).

1. *Waiver*

"[T]he presence or absence of prejudice ... is determinative of" whether a party to an arbitration agreement has waived that right. *Demsey & Associates v. S.S. Sea Star,* 461 F.2d 1009, 1018 (2nd Cir.1972); *Liggett & Myers Inc. v. Bloomfield,* 380 F.Supp. 1044, 1047 (S.D.N.Y.1974) (Weinfeld J.) ("Such waiver is not to be lightly inferred. 'Mere delay in seeking a stay of the proceedings [pending arbitration] without some resultant prejudice to a party ... cannot carry the day.'" Quoting *Carcich v. Rederi A/B/ Nordie,* 389 F.2d 692, 696 (2nd Cir.1968)).

Cargill claims that defendant waived its right to compel arbitration by waiting nearly ten months before moving for a stay. Cargill also argues that it has been prejudiced by losing the time in London because it believed that the action was proceeding in this court. Defendant points out first that no discovery has been taken; second, that it raised the arbitration clause as a defense in its answer, placing Cargill on notice so that it could have protected itself from loss of time by pursuing arbitration in London simultaneously with the prosecution of this action.

■ I find that Cargill has not suffered such prejudice as to justify a finding of waiver of the contractual right to arbitration. The delay has not changed the position of the parties to Cargill's prejudice. *Demsey & Associates, supra,* 461 F.2d at 1018, ("[M]erely answering on the merits, asserting a counterclaim (or cross-claim) or participating in discovery, without more, will not necessarily constitute a waiver.")

The cases cited by the plaintiff are not persuasive. In *Cereal Mangimi v. M/T*

---

2. The pertinent provision of the Act reads:

If any suit or proceeding be brought in any of the Courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall, on application of one of the parties, stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration. 9 U.S.C. App. § 3

Both parties in this case have met the requirements of the arbitration clause and are able to proceed to arbitration.

*All Star,* 1978 A.M.C. 852 (E.D.Va.1978), it was unclear from the beginning whether there was an arbitration clause in the agreement, and by the time the defendant first raised the issue discovery had already closed. In *Liggett & Myers Inc., supra,* discovery had closed and the defendant had asserted a counter-claim before moving to arbitrate.

### 2. *Incorporation*

Cargill brings the action as assignee of the bill of lading. It contends that the bill of lading does not effectively dictate an arbitration requirement. It points out that the printed clause of the bill of lading adopting the "terms, conditions and exceptions" of the charter party left blank the space provided for identifying the charter party.[3] Cargill contends that by failing to identify the charter party with specificity, the carrier effectively failed to incorporate its terms and to give notice of them to assignees of the bill of lading.

■ The argument is without merit on these facts. In the first place, clause nine of the bill of lading expressly stated: "Arbitration Clause of the 'Centrecon' charterparty to apply." Second, although Cargill is the holder of the bill of lading, Cargill itself negotiated the charter with Wursata. It agreed to the arbitration clause. Whatever may be the merits of its argument in a case where consignor or consignee under the bill of lading is without adequate notice of the terms of a charter party adopted by cross-reference, *see Federal Insurance Co. v. M/V Andecea,* 1787 A.M.C. 566 (S.D.N.Y.1986) (third party assignee cannot be compelled to arbitrate pursuant to a defective incorporation clause), this contention no application to the very party that negotiated the charter.

Thus in *State Trading Corp. of India v. Grunstad Shipping,* 582 F.Supp. 1523 (S.D.N.Y.1984) (Weinfeld, J.), the consignee of cargo sought to enforce the arbitration requirement contained in a charter party which, like this one, had been imperfectly incorporated in the bill of lading. Because the carrier itself was a party to the charter and had full notice of its terms, Judge Weinfeld refused to permit it to claim benefits resulting from the failure of the bill of lading to identify the charter party by date and identity of its signatories.

### 3. *Application of* COGSA

Cargill contends the arbitration clause is void by reason of incompatibility with two requirements of COGSA.[4] First, Cargill claims that § 1303(6) of COGSA bars enforcement of an arbitration clause because it requires an aggrieved party to "bring suit within one year after the delivery of the goods." Cargill claims this provision requires "suit" and therefore inferentially forbids arbitration.

■ This contention is without merit. The clear purpose of this COGSA section is to limit the time in which suit may be brought, not to require a court action in preference to arbitration. The courts that have considered the interaction between this section and a contractual arbitration clause have rejected Cargill's position. *See Son Shipping Co., Inc. v. De Fosse & Tanghe et. al.,* 199 F.2d 687, 689 (2d Cir. 1952); *Government of Republic of Korea v. New York Nav. Co.,* 469 F.2d 377, 380 (2d Cir.1972).

Second, Cargill argues that foreign arbitration in London would lessen the carrier's liability in contravention of § 1303(8) of COGSA. It claims that the arbitration will

---

3. The incorporation clause of this bill of lading reads, "All other terms, conditions, and exceptions as per charter party dated _____ and addenda thereto to be considered as fully incorporated herein as if fully written."

4. In accordance with a requirement of the charter, the bill of lading contained a "Clause Paramount" which states:
   This Bill of Lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April 15, 1936 which shall be deemed to be incorporated herein and nothing herein shall be deemed a surrender by the Carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities under the said Act. If any term of this Bill of Lading be repugnant to the said Act to any extent, such term shall be void to that extent but no further.

take several years to complete, that none of the parties have any connection with England, and that the British arbitrators might not apply American law conforming to COGSA's requirements.

One of the principal purposes of COGSA is to void overreaching clauses inserted by carriers in their bills of lading which unreasonably limit the rights of cargo claimants. *See Encyclopaedia Britannica, Inc. v. S.S. Hong Kong Producer*, 422 F.2d 7, 11–12 (2d Cir.1969), *cert. denied*, 397 U.S. 964, 90 S.Ct. 998, 25 L.Ed.2d 255 (1970). That purpose is expressed in § 1303(8) which protects claimants under a bill of lading from provisions that violate COGSA's guarantees or lessen the liability of the carrier.[5]

In *Indussa Corp. v. S.S. Ranborg*, 377 F.2d 200, 203 (2d Cir.1967) *en banc*, the Court of Appeals nullified a clause mandating a foreign law and a foreign forum as it applied to an American consignee. In *State Establishment for Agricultural Produce Trading v. M/V Wesermunde*, 838 F.2d 1576, 1581–1582 (11th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 273, 102 L.Ed.2d 262 (1988), the Eleventh Circuit refused to enforce a charter party arbitration clause against the holder of a bill of lading who had no notice of the charter party. In *Siderius, Inc. v. M.V. Ida Prima*, 613 F.Supp. 916, 920 (S.D.N.Y.1985), although noting contrary authority, this judge questioned whether a foreign arbitration clause in a bill of lading derogated sufficiently from the rights guaranteed by COGSA to an assignee of a bill of lading to be "null and void" under § 1303(8). That question might be troublesome here if the rights and obligations as between Cargill and the carrier were defined solely by a bill of lading which specified foreign arbitration. But that is not the case. Although Cargill is the holder of the bill of lading, it also negotiated a charter party with the carrier. It agreed in the charter party to foreign arbitration. A charter party is not

governed by COGSA. *See* 46 U.S.C. § 1305. Shipowners are free to bargain with charterers of vessels without the limitations that COGSA imposes on a bill of lading offered by a carrier to one who would simply book cargo on a vessel. Having agreed to London arbitration in a freely-negotiated charter party, Cargill cannot avoid that obligation by claiming the rights it might have if it were merely the assignee of a bill of lading. *See* G. Gilmore & C. Black, *The Law of Admiralty*, § 4-10 at 218–19 (2d ed. 1975).

■ Put otherwise, there may be a conflict of policy between two acts of Congress—the Arbitration Act and COGSA. The Arbitration Act encourages the enforcement of agreements to arbitrate. Depending whether my doubts expressed in *Siderius* are accepted in higher courts, COGSA may imply a policy disfavoring the enforcement of foreign arbitration clauses by carriers against holders of bills of lading. However, where the holder of the bill of lading freely and lawfully agreed to arbitration in a contract of charter which is expressly exempted from COGSA's coverage, COGSA offers little justification for preventing the enforcement of the contract and overriding the policy of the Arbitration Act.

Cargill may argue that the validity of this conclusion is cast in doubt by the provision of the charter to the effect that "This contract shall be completed and superseded by the signing of Bills of Lading . . . ." According to this argument, the legality of the arbitration clause should be adjudged without reference to the superseded contract because at the time the claim arose the contract of charter, which is exempt from COGSA's coverage, had terminated and been superseded by the bill of lading, which *is* subject to COGSA's coverage.

The argument is overly technical and defeats the contractual intention of the parties without justification. It is clear the

---

**5.** (8) Any clause covenant, or agreement in a contract of carriage relieving the carrier or the ship from liability for loss or damage to or in connection with the goods, arising from negligence, fault, or failure in the duties and obli-

gations provided in this section, or lessening such liability otherwise than as provided in this chapter, shall be null and void and of no effect. 46 U.S.C.App. § 1303(8).

parties to the charter intended to contract for arbitration and did so. It is clear they had a right to do so without interference from COGSA, which does not govern charters. With a slight immaterial addition of words used to express the agreement, the obligation would have been invulnerable to Cargill's argument.[6] To allow plaintiff's argument to defeat what was intended and stated in the charter and is enforceable under law, by reason of the failure to use certain words of art, would be unjustifiable.

■ I find that enforcement of the arbitration clause against the charterer that negotiated it does not violate any of the prohibitions of COGSA.

### 4. *In Rem Jurisdiction*

Finally, Cargill contends that even if it could be compelled to arbitrate by the carrier with which it contracted for that remedy, it had no such agreement with the ship and therefore cannot be compelled to arbitrate an *in rem* claim against the S/S Ocean Traveller. I find no merit in the contention.

■ The *in rem* liability of the ship is a legal fiction, nurtured by courts to protect those having claims against elusive ship owners. A claimant who succeeds in attaching the vessel against which the claim is directed[7] is relieved of the need to circle the globe in efforts to sue and collect from the owner. The court that issued the attachment has jurisdiction, and once judgment has been rendered, may enforce collection against the ship. It does not necessarily follow that contracts of charter governing the manner of settling disputes between owner and charterer are disregarded in an *in rem* proceeding. *See Continental Grain Co., Inc. v. Barge FBL–585*, 364 U.S. 19, 23, 80 S.Ct. 1470, 1473, 4 L.Ed.2d 1540 (1960) (Related *in rem* and *in person-*

*am* claims may be transferred under 28 U.S.C. § 1404 because legal fiction should not override the substance). If it were Cargill, the charterer, that was seeking to enforce the arbitration clause, surely the ship could not defeat this contractual right by arguing that Cargill had made the agreement with the owner and not with the vessel. The reciprocal right to compel compliance with the agreement inures to the ship.

■ Cargill's argument permits the fiction to distort reality. The purpose of the fiction is to simplify the task of suit and collection against ship owners. It should not distort fundamental contract rights. Arbitration was agreed as the method for resolving disputes between the owner and the charterer. That agreement should not be defeated merely because jurisdiction is founded on a legal fiction. In practical terms, notwithstanding the fiction, the dispute remains one between Cargill and Wursata, the parties which agreed to arbitrate their differences.

Furthermore, adherence to the legal fiction would not necessarily lead to a different result. In view of the fact that the charter party created claims enforceable in court against the ship, the provision for arbitration may be seen as a contract made by the owner not only for its own benefit but for that of the ship as well. The ship may accordingly be seen as a third-party beneficiary of the arbitration agreement, fully authorized under classic contract law to enforce its provisions.

Finally, the contention is nearly moot. If Wursata has the right to arbitrate the dispute and Cargill's action against it is properly stayed pending that arbitration by reason of the contract between them, there is good reason to *stay* Cargill's parallel suit brought against the vessel, regardless of whether arbitration of this action could be

---

6. For example, the charter might have provided, "All disputes between the parties arising under this contract or under the bill of lading shall be referred to arbitration. This clause shall survive the issuance of the bill of lading." Such a formulation would have made the arbitration clause invulnerable to these contentions.

7. Or, as here, obtains a letter of undertaking issued by the owner or insurer of the vessel that serves the same purpose. *See Continental Grain Co. v. Federal Barge Lines, Inc.*, 268 F.2d at 243 (5th Cir.1959), *aff'd*, 364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960).

compelled. The stay would be in the interest of economy, avoiding parallel identical proceedings and giving preference to the one that pursued the method which the parties to the contract had agreed on. *See Maize Board of Republic of South Africa v. M/V Courageous*, 685 F.Supp. 420, 423 (S.D.N.Y.1988); *Bunge v. Stolt Hippo.* 1980 A.M.C. 2611, 2616 (S.D.N.Y.1980).

Thus, even if Cargill may not be compelled to arbitrate its dispute with the vessel, I would nonetheless stay trial of that action to await the resolution of the arbitration of Cargill's dispute with the owner. The question whether the ship may compel Cargill to arbitrate therefore has no practical importance.

CONCLUSION

The motion is granted. The parties shall proceed to arbitration in London pursuant to the terms of the arbitration clause in the contract of charter. This action is stayed pending conclusion of the arbitration.

SO ORDERED.