CLEMENT, Circuit Judge:
A vessel owner appeals the district court’s denial of its motion to compel arbitration and stay litigation between itself and a shipper, where the vessel owner had chartered the vessel to a time charterer and the time charterer had, in turn, chartered the vessel to the shipper.[1] The shipper cross-appeals the district court decisions dismissing its bailment claim against the vessel operator and granting a motion to compel arbitration and stay litigation between the shipper and the time charterer. We reverse the district court’s denial of the motion to compel arbitration between the vessel owner and the shipper because the bills of lading between the vessel owner and the shipper incorporated the arbitration clause of the shipper’s voyage charter with the time charterer. We dismiss, for lack of appellate jurisdiction, the shipper’s cross-appeal relating to the order compelling arbitration and staying litigation because that part of the case has not yet led to a final judgment by the district court. We dismiss, also for a lack of appellate jurisdiction, the voyage charterer’s cross-appeal of the dismissal of its bailment claim.
I. FACTS AND PROCEEDINGS
Cargill Ferrous International (“Cargill”) and Western Bulk Carriers K/S (“Western”) entered into a voyage charter to transport Cargill’s steel coils from Vent-spils, Latvia to New Orleans, Louisiana. The voyage charter contained a mandatory arbitration clause. Western provided the M/V SEA PHOENIX, which it had time-chartered. After stevedores discharged the steel coils in New Orleans, Cargill discovered that fresh water had rusted the steel coils. Cargill sued Western; Serene Sky Shipping, Inc., the owner of the SEA PHOENIX; COSCO (Singapore) Pte. Ltd., the operator of the SEA PHOENIX (Serene and COSCO collectively as “Serene”); the SEA PHOENIX in rem; and others.
Pursuant to the voyage charter, the district court referred Cargill’s claims against Western to arbitration. The district court denied Serene’s motion to compel arbitration and stay litigation. The district court reasoned the claims against Serene were not subject to the voyage charter’s arbitration clause because Serene was not a party to the voyage charter. Although the district court held that the bills of lading were the contracts of carriage for purposes of Cargill’s claims against Serene, the district court concluded that the bills of lading had not incorporated the voyage charter’s arbitration clause. After a two-day bench trial, the court entered judgment against Serene for $57,182.15 plus prejudgment interest but denied Cargill’s bailment claim against Serene.
II. STANDARD OF REVIEW
We review a district court’s refusal to compel arbitration and stay litigation de novo. Texaco Exploration & Prod. Co. v. AmClyde Eng’d Prods. Co., 243 F.3d 906, 908 (5th Cir.2001). In contrast, we do not review interlocutory orders compelling arbitration because our jurisdiction is limited: “Except as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order (1) granting a stay of any action” to accommodate arbitration. 9 U.S.C. § 16(b) (1999).
*698 III. DISCUSSION
The Court will first address the issues presented by the parties. After, it will address arguments raised by the opinion concurring in part, dissenting in part.
A.
Serene asks this Court to review the district court’s denial of Serene’s motion to compel arbitration and stay litigation. As cross-appellant, Cargill asks the Court to review the district court’s decision to compel arbitration between Cargill and Western and its decision to dismiss Cargill’s bailment claim.
(1)
Serene argues it has a right to compel arbitration, either because the voyage charter served as the contract between Serene and Cargill or because the bills of lading incorporated the voyage charter. Cargill disputes both arguments and further contends Serene waived any right it may have had to compel arbitration.
In Cargill B.V. v. S/S OCEAN TRAVELLER, 726 F.Supp. 56, 59 (S.D.N.Y.1989), Cargill argued, as it does here, that a bill of lading failed to incorporate a charter party where the space provided on the bill of lading for identifying a charter party was left blank. OCEAN TRAVEL-LER rejected this argument: “The argument is without merit on these facts.... Whatever may be the merits of its argument in a case where consignor or consignee under the bill of lading is without adequate notice of the terms of a charter party adopted by cross-reference, this contention [has] no application to the very party that negotiated the charter.” Id. (citations omitted). In a similar vein, the bill of lading in State Trading Corp. of India v. Grunstad Shipping, 582 F.Supp. 1523-25 (S.D.N.Y.1984), aff'd without opinion, 751 F.2d 371 (2d Cir.1984), stated: “All terms and conditions, liberties and exceptions of the charter-party, dated as overleaf, are herewith incorporated.” State Trading concluded this language was sufficient to incorporate a charter party:
It is true that the bill of lading did not name the parties to the charter party it was attempting to incorporate, or state the date or place of its making.... [WJhere there is no confusion whatsoever concerning who in fact was the charterer on this voyage, or which charter party governed the rights of the charterer vis-a-vis the shipowner, an incorporation clause may effect incorporation even though it does not contain the names of the signatories or the date or place of the making of the charter party. Here, defendant could not have been confused regarding which charter party the bill of lading sought to incorporate. The terms of the charter party between the defendant and the charterer ... contained a provision that “any bill of lading signed by the Master or Agent of the Owner shall be without prejudice to the terms, conditions, and exceptions of this Charter and shall be subject to all such terms, conditions, and exceptions .... ” Thus, defendant can hardly express ignorance as to which charter party the bill of lading signed by its agent referred.
582 F.Supp. at 1524. The bills of lading in the present case are almost identical to the bills of lading in State Trading, with the exception that these bills of lading specifically mention the arbitration clause: “All terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, including the Law and Arbitration Clauses, are herewith incorporated.” (emphasis added). State Trading holds such language is enough to effect incorporation where the bills of lading are in the hands of the charterer and where there is no confusion concerning who was the charter *699 er or which charter party the bills of lading sought to incorporate.
There can be no confusion in the present case. First, Cargill received and continued to hold bills of lading issued pursuant to the Cargill-Western Bulk voyage charter. See OCEAN TRAVELLER, 726 F.Supp. at 59.[2] Second, the agent who signed the bills of lading, New England Shipping Company, received its agency authority solely from a term in the voyage charter.[3] Third, the bills of lading indicate freight is to be paid pursuant to the charter party. This provision depends on the incorporation of the Cargill-Western Bulk voyage charter to retain any meaning. Fourth, the Cargill-Western Bulk voyage charter, the only charter party Cargill signed, requires all bills of lading issued under the voyage charter to incorporate, among other things, the voyage charter’s arbitration clause. State Trading, 582 F.Supp. at 1524.
Cargill clings to this Court’s opinion in Cargill, Inc. v. GOLDEN CHARIOT MV, 31 F.3d 316 (5th Cir.1994), arguing it provides the test in this circuit for whether language in a bill of lading is sufficient to incorporate a charter party. In GOLDEN CHARIOT, a carrier, Ma-rinera, asserted that a dispute between it and Savannah, a third-party purchaser of a shipment of sugar, would have to be arbitrated pursuant to a charter party between itself (Marinera) and the shipper, Cargill. GOLDEN CHARIOT acknowledged the established rule that charter parties are the contracts of carriage in private carriage. 31 F.3d at 318; see Alamo Chem. Transp. Co. v. MTV OVERSEAS VALDES, 469 F.Supp. 203, 208-11 (E.D.La.1979) (stating that where charter party provided that the charterer employed the “entire ship” or “full capacity of the ship,” it is a private carriage and the charter party is the contract of carriage). But GOLDEN CHARIOT went on to consider the argument that “when cargo is sold to a third party receiver of goods, who was not a party to the charter agreement, and the bill of lading is delivered to that party, the bill of lading becomes the contract of carriage.” 31 F.3d at 318 (emphasis added). GOLDEN CHARIOT adopted this argument and stated, as an exception to the general rule, that bills of lading issued under a charter party serve as the contract of carriage if the bills of lading are negotiated. Id. GOLDEN CHARIOT then considered whether the bills of lading then at issue incorporated the charter party. To do so, the Court announced the following test: “where the date and name of the charter party is left blank there is no incorporation.” 31 F.3d at *700 318 (citations omitted). The GOLDEN CHARIOT test does not, however, apply when the bills of lading remain in the hands of a party to the voyage charter. See, e.g., Steel Coils, Inc. v. M/V LAKE MARION, 2001 WL 1518302 at *8-9, 2001 U.S. Dist. LEXIS 20114 (E.D.La. November 29, 2001) (“When a bill of lading has been transferred for value to a third party not a party to the charter party, it constitutes an undertaking independent of the charter party except as to provisions of the charter party expressly incorporated into it.... This places [a shipper] in a far different position than a third-party purchaser who is unrelated to the charterer.”) (citing GOLDEN CHARIOT, 31 F.3d at 318); see also Steel Warehouse Co. v. Abalone Shipping Ltd. of Nicosai, 141 F.3d 234, 237 (5th Cir.1998) (finding incorporation where the bill of lading only listed the date of the charter party even though the bill of lading was negotiated to a third-party purchaser, and noting “precedent allows for quite a bit of leeway in the drafting of [incorporation] clauses, and does not require a punctilious degree of specificity”).
Cargill asserts that, even if Serene had a right to compel arbitration, Serene waived its right.
Waiver of arbitration is not a favored finding and there is a presumption against it. See Steel Warehouse, 141 F.3d at 234; see also Leadertex, Inc. v. Morganton Dyeing & Finishing Corp., 67 F.3d 20, 25 (2d Cir.1995) (stating waiver of arbitration “is not to be lightly inferred” in light of the strong federal policy in favor of arbitration). A party waives its right to arbitration only when participation in the litigation has been so substantial that compelling arbitration would prejudice the other party. “The question of whether the movant’s participation in the litigation has been substantial enough to constitute waiver is fairly strict: waiver of an arbitration right will not be lightly inferred without some showing of prejudice.” Ventura Maritime Co., Ltd. v. ADM Export Co., 44 F.Supp.2d 804, 1999 AMC 1676, 1680-81 (E.D.La.1999) (citations omitted).
Cargill argues Serene waived its right because Serene elected to proceed with litigation instead of taking an immediate appeal of the district court’s denial of the motion to compel arbitration and stay litigation. See 9 U.S.C. § 16(a)(1999) (authorizing interlocutory appeal of orders refusing to compel arbitration and stay litigation). Serene counters that this decision is permissible under Sibley v. Tandy Corp., 543 F.2d 540, 542 (5th Cir.1976), where we wrote that a party “did not waive its right [to arbitration] by failing to press an interlocutory appeal of the district judge’s denial of its motion to stay arbitration.” We agree. Failure to press an interlocutory appeal is not dispositive of whether a party waives the right to compel arbitration. The proper test is whether participation in litigation prejudiced the other party. Ventura Maritime Co., Ltd., 44 F.Supp.2d at 808, 1999 AMC at 1681.
Cargill contends it was prejudiced by Serene’s participation in the litigation, which included more discovery than would be available in arbitration and a two-day bench trial. Cargill argues that it is a waste of judicial resources and an affront to arbitration to allow the losing side in litigation to obtain a do-over by compelling arbitration after its loss in court. Cargill notes its arbitration claims are now time-barred.
Cargill was not prejudiced by Serene’s participation in the litigation. The voyage charter required arbitration to be commenced within nine months from the cargo’s discharge. Stevedores in New Orleans discharged the cargo on October 13-16, 1997. Cargill did not initiate any arbitration between any party within nine *701 months of the discharge. Cargill commenced the present suit almost a year after discharge, on October 9, 1998. As the aggrieved, Cargill had the duty to initiate arbitration within the applicable time-limit. Thus it was Cargill’s own failure that caused any prejudice it may suffer from the defeat of its arbitration claims. As one commentator has noted:
When on the ground that a contract is subject to an arbitration clause incorporated from a charter-party, one party to a bill of lading applies to the court to stay an action brought against him by the other party to the bill, he only rarely does so because he prefers to arbitrate than to litigate. The usual reason is because, when the application is made, the time has expired by which the other party must start any arbitration proceedings. Success in staying the court proceedings thus means a complete defeat of the claim. It is for this reason, and not because of any intrinsic merit in the process of arbitration, that disputes as to whether an arbitration clause in a charter-party has or has not been incorporated into the bill of lading arise with such regularity.
Thomas J. Sohoenbaum, 2 Admiralty and Maritime Law 212 (3d ed.2001) (citing Note, Incorporation of Charter Party Terms, Lloyd’s Mar. & Comm. L.Q. 194-95 (1984)) (emphasis in original). Under the facts of this case, it is clear Serene is not gaming the system by seeking a win at trial, and in the case of a loss, anticipating a second bite at the apple through arbitration. Rather, Serene has preferred arbitration since the time Cargill filed its complaint.
The only possible prejudice to Cargill is the expenses it incurred pursuing the litigation, including taking depositions, some of which required international teleconferencing, and participating in a two-day bench trial. Serene asserted its right to arbitrate in its answer to Cargill’s second amended complaint. It is true Serene waited until a settlement conference six months later to file its motion to compel arbitration. But at that point, only one deposition had been taken, and that deposition was noticed by the stevedores on their own behalf. We cannot infer Serene maliciously forced Cargill to spend money to put up its proof because Serene was also forced to spend its money taking or defending depositions and participating in the trial. Given that compelling arbitration would defeat Cargill’s claims, it is untenable to argue that Serene viewed a costless automatic victory in arbitration as the back-up plan to a potential loss from costly litigation.
(2)
As cross-appellant, Cargill challenges the district court’s decisions to compel arbitration between Cargill and Western and to dismiss Cargill’s bailment claim.
Western succeeded in compelling arbitration and has since completely avoided the arbitration process. Nevertheless, our review of this issue is limited. The district court’s July 18, 2000 order is only “an order granting a stay”; no appeal is possible until the court reaches a “final decision with respect to an arbitration.” 9 U.S.C. § 16(a)(3) (1999); see Am. Heritage Life Ins. Co. v. Orr, 294 F.3d 702, 707 (5th Cir.2002) (holding the court of appeals gains appellate jurisdiction over a motion to compel arbitration after the district court clearly expresses the intention of effectively ending the entire matter on the merits by either (1) dismissing the cáse or (2) entering a “final judgment” stating “this case is closed”). The district court granted Western’s motion to compel arbitration and stay litigation and has not yet entered final judgment as between Cargill and Western. Until it either closes or dismisses this part of the case, the district *702 court, and not this Court, has the power to vacate its stay. Miller v. Aaacon Auto Transp., Inc., 545 F.2d 1019, 1020 (5th Cir.1977) (rejecting argument that district court lacks authority to vacate, sua sponte, a stay pending arbitration).
Moreover, this Court is deprived of jurisdiction over all of Cargill’s claims as cross-appellant, including its bailment claim, until the district court certifies a final judgment pursuant to Federal Rule of Civil Procedure 54(b). Thus we dismiss Cargill’s cross-appeal.
B.
The opinion concurring in part, dissenting in part, disagrees with the Court’s holdings regarding two issues: (1) whether the bills of lading incorporate the arbitration agreement in the Cargill-Western Bulk charter party, such that Serene can compel Cargill to arbitrate its claim against Serene, and (2) whether the Court has subject matter jurisdiction to determine whether it has subject matter jurisdiction.
(1)
The disagreement over whether the bills of lading incorporate the charter party stems from a disagreement over whether bills of lading issued pursuant to a charter party play a different role once they are negotiated. The dissent appears to believe that bills of lading issued pursuant to a charter party have one function that does not change even if the bills of lading are later negotiated. Thus, the dissent apparently concludes that the test for incorporation developed by a line of cases dealing with negotiated bills should apply to bills that have not been negotiated. The dissent offers no legal authority in support of its undifferentiated view of bills of lading. In support of its transplanting the incorporation test so that the same rule of incorporation applies to any bill of lading, negotiated or non-negotiated, the dissent offers one policy argument: “In my view, it makes more sense....” [4]
Admiralty law teaches that bills of lading may serve multiple functions. “A bill of lading is, in the first instance and most simply, an acknowledgment by a carrier that it has received goods for shipment. Secondly, the bill is a contract of carriage. Thirdly, if the bill is negotiated ... it controls possession of the goods and is one of the indispensable documents in financing the movement of commodities and merchandise throughout the world.” Grant GilmoRe & Charles L. Black, The Law of Admiralty, 93 (2d ed., 1975); see also Schoenbaum, supra, 59 (stating three potential functions of a bill of lading are as receipt, contract of carriage, and document of title).
A bill of lading’s character changes when it is negotiated. See, e.g., GOLDEN CHARIOT, 31 F.3d at 318 (adopting argument that “when cargo is sold to a third party receiver of goods, who was not a party to the charter agreement, and the bill of lading is delivered to that party, the bill of lading becomes the contract of car *703 riage”) (emphasis added); Otto Wolff Handelsgesellschaft, mbH v. Sheridan Transp. Co., 800 F.Supp. 1353, 1355 (E.D.Va.1992) (stating that where the bill of lading issued under charter party is negotiated to a third-party, the bill of lading becomes the contract of carriage); Schoenbaum, supra, 210 (“The situation becomes more complicated, however, where the bill of lading issued under a charter party is negotiated to a third party consignee or holder in due course.”); see also FARLAND, 462 F.2d at 328 (“It is true that when there is a voyage or, even more clearly, a time charter, a bill of lading issued to the charterer-shipper, so long as it remains in his hands, usually is a mere receipt as between the parties to the charter and does not perform the additional function of a contract for the carriage of goods.”); Vanol USA, Inc. v. M/T CORONADO, 663 F.Supp. 79, 81 (S.D.N.Y.1987) (stating that a non-negotiated bill of lading issued under a charter party is a “receipt for the goods”).
The dissent apparently concedes the bills of lading in this case were not negotiated. Nevertheless, almost all of the cases the dissent cites involve negotiated bills of lading. See GOLDEN CHARIOT, 31 F.3d at 316-17 (“Six bills of lading were negotiated and transferred from Cargill to Savannah.”); Steel Warehouse, 141 F.3d at 235-36 (reciting that the voyage charterer, Mathan, negotiated a bill of lading to Steel Warehouse); Son Shipping Co. v. De Fosse & Tanghe, 199 F.2d 687, 688 (2d Cir.1952) (“While the vessel was proceeding from Antwerp to Palestine, Solel Bonch, Ltd., sold the full cargo of oil to The Palestine Electric Corporation and delivered the documents to it.”); Lafarge Corp. v. M/V MACEDONIA HELLAS, 2000 WL 687708 at *1-3, 2000 U.S. Dist. LEXIS 15963 (E.D.La.2000) (reciting that the voyage charterer, Cementia, negotiated bills of lading to Lafarge, and citing GOLDEN CHARIOT for the proposition that “[w]hen a negotiable bill of lading has been transferred to a third party, such a bill of lading constitutes a contract of carriage independent of the terms of any underlying charter party, except for the provisions of any charter party that have been incorporated into the bill.”); Mitsui & Co. v. M/V HERMANN SCHULTE, 1996 WL 365660 at *1-2 (E.D.La.1996) (reciting that the voyage charterer, Mitsui & Co. (U.S.A.), Inc., sold the cargo to Mitsui & Co., Inc., who sold the cargo the Shin-Etsu Chemical Co., Ltd., and noting that “[w]hen a negotiable bill of lading has been transferred to a third party, such a bill of lading constitutes a contract of carriage independent of the terms of any underlying charter party, except for the provisions of any charter party that have been incorporated into the bill.”); Joo Seng Hong Kong Co., Ltd., v. S.S. UNI-BULKFIR, 493 F.Supp. 35, 37 (S.D.N.Y.1980) (reciting that the voyage charterer, Cook Industries, Inc., negotiated bills of lading to Joo Seng Hong Kong Co.). If, as the Court concludes, the legal test for incorporation differs for negotiated and non-negotiated bills of lading, the cases cited by the dissent are irrelevant on the issue of the proper test for incorporation. On the other hand, at least two of these cases, Lafarge and Mitsui, are at least partially responsive to whether negotiated and non-negotiated bills of lading receive different incorporation tests, and both support the Court’s conclusion that there are different tests.
Distinguished members of both the Eastern District of Louisiana and the Southern District of New York, two of the districts with the busiest admiralty dockets in the country, recognize that the legal standard for incorporation is different for negotiated and non-negotiated bills of lading. See, e.g., LAKE MARION, 2001 WL 1518302 at *8-9, 2001 U.S. Dist. LEXIS 20114 (E.D.La. November 29, 2001) (Vance, J.) (recognizing that a shipper is in *704 a “far different position” than a third party who receives a negotiated bill of lading); OCEAN TRAVELLER, 726 F.Supp. at 59 (Leval, J.) (discussing irrelevance of incorporation test used for negotiated bills of lading for purposes of non-negotiated bills of lading); State Trading, 582 F.Supp. 1523, 1525 (S.D.N.Y.1984) (Weinfeld, J.) (noting that specificity in the bill of lading is required if the bill has been negotiated); Associated Metals and Minerals Corp. v. M/V VENTURE, 554 F.Supp. 281 (E.D.La.1983) (Schwartz, J.) (discussing the need for bills of lading to include more information to effect incorporation once the bills have been negotiated); see also Steel Coils, Inc. v. CAPTAIN NICHOLAS I M/V, 197 F.Supp.2d 560, 564-67 (E.D.La. 2002) (Fallon, J.) (discussing generally the interplay of bill-of-lading negotiation and charter-party incorporation).
Even the dissent concedes some eases have found incorporation with much less information than is required by GOLDEN CHARIOT. Dissent at 707. See Duferco Steel Inc. v. M/V KALISTI, 121 F.3d 321, 324 (7th Cir.1997) (finding incorporation where a non-negotiated bill of lading included the charter party’s execution date and name of the form on which the charter party was printed); Cont’l U.K. Ltd. v. Anagel Confidence Compania Naviera, S.A., 658 F.Supp. 809, 813 (S.D.N.Y.1987) (“As Between these parties, citation to the date alone was sufficient to clearly incorporate the subcharter’s provisions.”).
As elsewhere noted, the correct test for whether a bill of lading issued under a charter party that remains in the hands of the charterer incorporates the charter party is whether “no confusion” exists concerning who in fact was the charterer on a voyage or concerning which charter party governs the rights of the charterer. State Trading, 582 F.Supp. at 1524. There can be no genuine confusion in this case. See infra Part III.A.(1).
The dissent suggests the intentions of contracting parties are irrelevant to construing the bill of lading: “[i]t may be that the bills of lading should have incorporated the charter party between Western Bulk and Cargill. That does not, however, mean that the bills of lading did incorporate the charter party.” Dissent at 708-09. On the contrary, the contractual terms in the voyage charter, which were actively negotiated by the parties, are far more probative of the intentions of the parties than is a bill of lading which is normally considered a receipt, and which was issued as a matter of course by a third party agent who was removed in time and space from the negotiations regarding the charter. See, e.g., CAPTAIN NICHOLAS I, 197 F.Supp.2d at 566 (noting that charter party’s requirement that bills of lading include a USA Clause Paramount was an expression of the intention of the parties to include such a Clause Paramount in the bills of lading, even though the freight forwarder who prepared the bills of lading omitted the USA Clause Paramount). In the present case, the charter party’s requirement that bills of lading incorporate its arbitration clause is persuasive evidence there was no confusion over who was a party to the charter party or which charter party should govern.
(2)
A bedrock principle of federal courts is that they have jurisdiction to determine jurisdiction. See, e.g., Capron v. Van Noorden, 2 Cranch 126, 6 U.S. 126, 2 L.Ed. 229 (1804). The dissent complains that because we do not have jurisdiction under Rule 54(b), we therefore do not have jurisdiction to decide whether we have jurisdiction under the Federal Arbitration Act. The dissent appears to propose that a hierarchy exists among the reasons this Court lacks subject matter jurisdiction, such that a court runs afoul by considering *705 the reasons in the incorrect sequence. The dissent cites no legal authority for this interpretation of two centuries of jurisprudence, and we decline to adopt it. See Siegert v. Gilley, 500 U.S. 226, 235, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) (Kennedy, J., concurring) (defending courts of appeals that decide cases before them on the grounds that appear to offer the most direct and appropriate resolution).
IV. CONCLUSION
For the reasons stated, the district court’s denial of Serene’s motion to compel arbitration is reversed, the judgment ordering Serene to pay Cargill $57,182.15 plus prejudgment interest is vacated, and Cargill's claims as cross-appellant are dismissed without prejudice.
REVERSED IN PART; DISMISSED IN PART.

. We ignore, for simplicity, additional intermediate charterers.

. It should be noted that the bills of lading indicate the party from whom Cargill purchased the steel coils, AO Severstal, is the shipper and Cargill is the consignee — the bills of lading contain the phrase: “to the order of Cargill”. This does not change the analysis for two reasons. First, the cargo was shipped FOB Ventspils, Latvia, so Cargill assumed responsibility for the cargo upon is stowage, lashing, and dunnage in Latvia. Second, and most importantly, Cargill arranged the shipment by negotiating and signing the voyage charter. Thus Cargill is the shipper for purposes of the charter party and any analysis under the Carriage of Goods by Sea Act, 46 U.S.C.A. §§ 1300-15 (West 1975).

. The district court held that Serene judicially admitted New England acted as Serene's agent. The only document addressing New England’s agency authority is the voyage charter. Thus, bills of lading signed by New England are enforceable only because of a contractual term agreed upon during negotiations between Cargill and Western. (We have not been asked to review whether, in light of provisions in the charter party between Serene and Western, Serene delegated sufficient agency authority to Western in order for Western's agents to bind Serene, thereby documenting New England’s agency relationship to Serene and supporting the conclusion of the district court.)

. For the proposition that bills of lading should be construed against their drafters, the dissent cites two cases that are of limited relevance because they involve bills of lading in common, as opposed to private, carriage. See SPM Corp. v. M/V MING MOON, 965 F.2d 1297, 1299 (3d Cir.1992) (reciting that Blue Anchor is a common carrier and that three crates of equipment were shipped on a container vessel); West India Indus., Inc. v. Tra-dex, Tradex Petroleum Servs., 664 F.2d 946, 947-48 (5th Cir.1981) (reciting facts of common carriage transportation of oil field equipment). For a discussion of the difference between common and private carriage, including the different roles played by bills of lading and the different law (hat applies to bills in each case, see Nichimen Co. v. M.V. FARLAND, 462 F.2d 319, 326-27 (2d Cir.1972).