IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 2, 2008

Charles R. Fulbruge III
Clerk

No. 07-20063

THE RICE COMPANY (SUISSE), S.A.

Plaintiff-Appellant

v.

PRECIOUS FLOWERS LIMITED; IBN AGROTRADING GMBH; M/V
NALINEE NAREE, her engines, boilers and tackle

Defendants-Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:06-CV-588

Before JOLLY, HIGGINBOTHAM, and PRADO, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Precious Flowers Limited ("Precious Flowers," or the "vessel owner") owned a vessel, the M/V NALINEE NAREE, and time chartered the vessel to IBN Agrotrading GmbH ("IBN"). The time charter included a London arbitration clause. The Rice Company[1] (or "the shipper") bought rice to ship to Togo. It voyage chartered the vessel from IBN to ship the rice, but the vessel allegedly had unseaworthy hatch covers and the rice was damaged. The voyage

---

[1] The Rice Company (Suisse) bought the rice, and its parent company, The Rice Company Roseville, chartered the vessel. We refer to both as "The Rice Company" or "the shipper."

charter required arbitration in New York, and the bill of lading[2] that would have issued, had the vessel not sailed early and the cargo not been damaged due to a storm, incorporated the terms of the voyage charter. Precious Flowers' insurance company issued a letter of undertaking to The Rice Company, claiming jurisdiction in district court in Houston. The Rice Company brought suit in district court against Precious Flowers, IBN, and the vessel, seeking damages and making a motion to compel arbitration in New York and to stay the proceedings pending arbitration. The district court denied the motion and did not decide the liability issues. The Rice Company appealed.

I

Precious Flowers, a Philippine company, was the record owner of the vessel the M/V NALINEE NAREE. It time chartered the vessel to the disponent owner IBN, a German company. IBN then voyage chartered[3] the vessel to The Rice Company. The Rice Company bought rice that it planned to ship from Lake Charles, Louisiana to Togo. It loaded approximately 1,752 metric tons of its rice onto the vessel but had to leave port early because of the impending Hurricane Rita. It was forced to dock in Houston, and it later discovered that seawater had pierced the hold, allegedly due to unseaworthy hatch covers, and had damaged

---

[2] "A Bill of Lading is a 'document which is signed by the carrier or his agent acknowledging that goods have been shipped on board a specific vessel that is bound for a particular destination and stating the terms on which the goods are to be carried.'" Hale Container Line, Inc. v. Houston Sea Packing Co., 137 F.3d 1455, 1462, n.12 (11th Cir. 1998) (quoting Thomas J. Schoenbaum, 2 Admiralty and Maritime Law § 10-11 at 44 (2nd ed.1994)).

[3] "A charter party is 'a specialized form of contract for the hire of an entire ship, specified by name.' . . . [A] time charter provides for the charterer to obtain the vessel for a fixed period of time, and under a voyage charter, the charterer obtains the vessel for the length of a voyage." Keytrade USA, Inc. v. Ain Temouchent M/V, 404 F.3d 891, 892, n.1 (5th Cir. 2005) (quoting Thomas J. Schoenbaum, Admiralty and Maritime Law, § 11-1 (4th ed. 2001)). The contract between IBN and The Rice Company refers to IBN as the Time-Charter / Disponent Owners, meaning that IBN time chartered the vessel from Precious Flowers and then voyage chartered the vessel to The Rice Company. The contract between IBN and The Rice Company is a voyage charter. The IBN-Precious Flowers contract is a time charter.

the rice. Precious Flowers gave The Rice Company a letter of undertaking from its Protection and Indemnity Club, stating that jurisdiction of the suit would be in Houston. The Rice Company filed suit in District Court under Rule 9(h) of the Federal Rules of Civil Procedure (permitting designation of a pleading as an admiralty or maritime claim), 28 U.S.C. § 1333 (providing original admiralty or maritime jurisdiction in district court), and 9 U.S.C. § 8 (of the Federal Arbitration Act, providing district courts with jurisdiction to direct arbitration for complaints brought for libel and seizure of a vessel). It listed the vessel, IBN, and Precious Flowers as Defendants, alleging that it had sustained damages of $760,000. In a separate motion, The Rice Company moved to compel arbitration in New York and stay the proceedings pending arbitration.

Precious Flowers filed a Claim of Owner in its in rem capacity arguing, inter alia, improper venue, lack of in personam jurisdiction, and failure to state a claim upon which relief can be granted. It restricted its appearance to an in rem defense under Rule E(8) of the Supplemental Rules for Certain Admiralty and Maritime Claims, reserving all other defenses. It also pled defenses under the Carriage of Goods by Sea Act (COGSA)[4] in its answer to The Rice Company's original complaint. The district court denied the motion to compel arbitration.

Whether arbitration ought to be compelled turns on three contracts. First, there is a voyage charter of September 9, 2005, between IBN, the "Time Charter/Disponent-Owners" of the vessel, and The Rice Company, the charterers. The terms of this voyage charter are incorporated into a second contract – the bill of lading or "cargo contract." Finally, there is the September 16, 2005, time charter, a one-time contract between IBN, the disponent owner, and Precious Flowers, the record owner of the vessel, for "one Timecharter-trip" from Lake Charles to Togo, "duration about 45 - 48 days."

---

[4] 46 U.S.C. § 30701.

The time charter between Precious Flowers and IBN[5] contains a Rider Clause 45(b), a broad arbitration clause requiring that "all disputes arising out of this contract shall be arbitrated in London."[6]  The parties rejected Rider Clause 45(a), a New York arbitration clause, by striking out each line of the clause and providing for London arbitration in Clause 45(b).  The Time Charter also allows the charterers of the vessel (IBN) to act on behalf of Precious Flowers, providing,

> 30. Bills of Lading
> (a) The Master shall sign the bills of lading for cargo as presented in conformity with mates receipts.  However, the Charterers [IBN] may sign bills of lading on behalf of the Master, with the Owner's prior written authority, always in conformity with mates receipts, without prejudice to this Charterparty.
> - see also clause 58 -
>
> (b) All bills of lading shall be without prejudice to this Charter Party and the Charterers shall indemnify the Owners against all consequences or liabilities which may arise from any inconsistency between this Charter Party and any bills of lading signed by the Charterers or by the Master at their request.
>
> 58. Bills of Lading
> Charterers and/or their agents are hereby authorized by Owners to sign on Master's and/or Owner's behalf Bills of Lading as presented

---

[5] "Messrs. Precious Flowers Limited, Bangkok/ Thailand Owners" and "Messrs. IBN-AGROTRADING GmbH Hamburg, Germany Charterers" signed the contract.

[6] Clause 45(b) provides, in part,

> LONDON All disputes arising out of this contract shall be arbitrated at London and, unless the parties agree forthwith on a single Arbitrator, be referred to the final arbitrament of two Arbitrators carrying on business in London who shall be members of the Baltic Mercantile & Shipping Exchange and engaged in Shipping, one to be appointed by each of the parties, with power to such Arbitrators to appoint an Umpire. No award shall be questioned or invalidated on the ground that any of the Arbitrators is not qualified as above, unless objection to his action be taken before the award is made.  Any dispute arising hereunder shall be governed by English Law.

in conformity with mate's receipts records without prejudice to this Charter-Party.

In case the original bill/s of lading are not available upon vessel's arrival at discharging port for any reason, the Master is to release the entire cargo to the Charterers order against presentation by Charterers or their agents of a single letter of indemnity with wording as per Owners standard P & I Club form, signed by Charterers only.

The voyage charter between IBN and The Rice Company is a pre-printed contract. The parties struck out the term "Owners" when that term first appears and replaced "Owners" with "IBN AGROTRADING GMBH HAMBURG as Time-Charter / Disponent-Owners." The charter describes "THE RICE COMPANY ROSEVILLE CALIFORNIA" as the "Charterers." Throughout the rest of the voyage charter the parties use the term "Owners" and "Charterers." Precious Flowers is not a party to the voyage charter. The voyage charter, like the time charter, contains an arbitration clause but requires arbitration in New York rather than London, providing,

That should any dispute arise between Owners and Charterers, the matter shall be referred to three persons at New York, one to be appointed by each of the parties hereto, and the third by the two so chosen, their decision or that of any two of them shall be final, and for the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial men. The arbitration is to be conducted in accordance with the rules of the Society of Maritime Arbitrators, Inc., of New York.

The third contract, a CONGEN form bill of lading, provides, "(1) All terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, including the law and Arbitration Clause, are herewith incorporated."

The Rice Company as the shipper claims that because Precious Flowers, the vessel owner, permitted IBN in its time charter to execute bills of lading on the owner's behalf pursuant to the time charter, and because IBN would have

5

executed the bill of lading for the rice voyage, the owner is contractually bound to the bill of lading and the voyage charter incorporated into the bill of lading requiring New York arbitration. Precious Flowers argues that IBN cannot prove that IBN would have signed the bill of lading on behalf of Precious Flowers and that even if IBN signed for Precious Flowers, the New York arbitration clause does not apply to Precious Flowers. The time charter between IBN and Precious Flowers only permits IBN to sign bills of lading on behalf of Precious Flowers "without prejudice" to Precious Flowers. Furthermore, Precious Flowers is not a party to the voyage charter requiring New York arbitration, it argues, and it never agreed to arbitration. Precious Flowers argues,

> there was no evidence presented that Precious Flowers ever intended, agreed, or consented to any party having authority to bind it to New York arbitration in contravention of the broad London arbitration clause in the Time Charter.

The shipper, in addition to arguing that the bill of lading binds the vessel owner to arbitration, provides two other lines of argument for compelling New York arbitration. First, it alleges that the term "Owner" in the voyage charter containing the New York arbitration clause is ambiguous, and that the term could be construed to include Precious Flowers. Second, it argues that because the disponent owners of the vessel (IBN) signed the voyage charter with the New York arbitration clause, any in rem disputes involving the vessel must also be arbitrated. In other words, it argues that the voyage charter compels the vessel to arbitrate and also requires the representative of the vessel to arbitrate. It would be impractical and senseless, urges The Rice Company, to require arbitration and allow a separate in rem proceeding in district court in that once arbitrated, the award cannot be challenged in district court. Along these same lines, it argues that because Precious Flowers filed a claim on behalf of its vessel

after the rice was damaged and would potentially benefit from the bill of lading, it is estopped from arguing that the bill's arbitration clause does not apply.

The district court concluded that the New York arbitration clause of the voyage charter does not bind the vessel's owner but rather its disponent owner (IBN), and that there is no contract binding Precious Flowers to New York arbitration. Nor does the in rem fiction of the vessel as defendant bind the vessel owner, the court held; "the vessel cannot be construed as an 'owner' or 'charterer' against whom the [New York arbitration] clause may be enforced." The Rice Company appealed. We will affirm.

II

Reviewing de novo "the district court's refusal to compel arbitration,"[7] we first address the voyage charter terms and the shipper's claim that the voyage charter is ambiguous and includes Precious Flowers. When interpreting the terms of the charter party,

> We must construe a charter "according to the intent of the parties as manifested by the whole instrument rather than by the literal meaning of any particular clause taken by itself."[8]

"[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."[9] In determining whether ambiguity exists, we view the

---

[7] Keytrade USA, 404 F.3d at 893; see also Terrebonne v. K-Sea Transp. Corp., 477 F.3d 271, 277 (5th Cir. 2007) (reviewing de novo "the district court's ruling on . . . [Defendant's] motion to compel arbitration and stay litigation").

[8] Nitram, Inc. v. Cretan Life, 599 F.2d 1359, 1368 (5th Cir. 1979) (quoting The Framlington Court, 69 F.2d 300, 303 (5th Cir. 1934)).

[9] Sedco, Inc. v. Petroleos Mexicanos Mexican Nat. Oil Co. (Pemex), 767 F.2d 1140, 1147 (5th Cir. 1985) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1982)).

disputed term "in the context of the entire charter party."[10]  In so doing, we find no ambiguity.

As we have observed, the parties, in the second line of the voyage charter, struck out the term "Owners" and inserted the term "IBN AGROTRADING GMBH HAMBURG as Time-Charter / Disponent-Owners."  The remainder of the text refers to "Owners."  The only mention of the "ship owners" is in Clause 32, "War risk," providing, "For the purpose of this clause, the words: (a) 'Owners' shall include the ship owners, bare board charterers, disponent Owners, manager or other operators who are charged with the management of the vessel, and the master . . . ."

We think it clear from line 2, where the parties replaced "Owner" with "IBN AGROTRADING GMBH HAMBURG as Time-Charter / Disponent-Owners," and the use of the term "Owner" throughout the rest of the contract,[11] that "Owner" is the "disponent-owner" IBN, and not Precious Flowers. "Ship owners" are specifically referenced in only one Clause, and Precious Flowers did not sign the contract.  We are persuaded that the parties to these instruments unambiguously structured their relationship such that the vessel owner was not a party to the voyage charter containing the New York arbitration clause.[12]

---

[10] Nitram, 599 F.2d at 1368.

[11] The voyage charter states, for example, "Owners to satisfy themselves about any restriction at loadingport but charterers confirm to know that there are minimum 9,55 m saltwater sailing draft loadingport"; "Vessel to be loaded at ~~Owners'~~/Charterer's expense . . ."; "Charterers to pay Owners demurrage at the rate of US$ 14.000 per day or pro rata upto and including 3 days of demurrage"; "Owners to be free of any ~~Any~~ extra insurance owing to vessel's age, flag or Ownership."

[12] Even if the contract were to be ambiguous, there is a powerful argument that the same result would follow – that we ought to construe the terms against the party who wrote the contract, particularly in light of the fact that Precious Flowers did not write the contract or participate in its negotiations and expressly rejected New York arbitration in its time charter with IBN.  See Zapata Marine Serv. v. O/Y Finnlines, Ltd., 571 F.2d 208, 209 (5th Cir. 1978) (citing Keaty v. Freeport Indonesia, Inc., 503 F.2d 955, 957 (5th Cir. 1974)) (holding that

## III

We now turn to The Rice Company's claim that because Precious Flowers permitted IBN to sign bills of lading on behalf of the Master, the bill of lading that would have issued would have been signed by IBN as an agent of Precious Flowers and would have bound Precious Flowers to New York arbitration. The Rice Company, as part of this claim, argues that in interpreting the language of the arbitration clause incorporated into the bill of lading, we should not consider whether the language of the arbitration clause is "broad" or "narrow," as that is allegedly an outdated analysis.

"[T]he question of arbitrability is to be decided by the court on the basis of the contract entered into by the parties."[13] Both the bill of lading and the voyage charter are contracts.[14] The voyage charter signed by IBN and The Rice Company contains a New York Arbitration clause, and the bill of lading that would have issued incorporates the arbitration clause. The parties do not dispute that the bill of lading incorporated the clause, but Precious Flowers argues that The Rice Company has presented no evidence showing that IBN would have signed on behalf of the Master and would have made Precious Flowers a party to the bill of lading. IBN could have signed for itself, as disponent owner. And even if there were proof that IBN would have signed as

---

"when a contract provision is subject to opposing, yet reasonable interpretation, an interpretation is preferred which operates more strongly against the party from whom the words proceeded").

[13] Commerce Park at DFW Freeport v. Mardian Const. Co.,729 F.2d 334, 338 (5th Cir. 1984) (citing 9 U.S.C. § 3).

[14] See Keytrade USA, 404 F.3d at 892 n.1 (quoting Thomas J. Schoenbaum, Admiralty and Maritime Law, § 11-1 (4th ed. 2001)) ("A charter party is 'a specialized form of contract for the hire of an entire ship, specified by name.'"); Farmland Indus., Inc. v. Andrews Transp. Co., 888 F.2d 1066, 1068 (5th Cir. 1989) (quoting Transp. Co. v. Commercial Metals, 456 U.S. 336, 342, (1982)) (defining a bill of lading as a "'basic transportation contract' between the shipper and carrier").

Precious Flowers' agent rather than signing for itself, the time charter permits IBN to sign on behalf of the Master only without prejudice to Precious Flowers.

Even assuming that the bill of lading would have been issued by IBN on behalf of Precious Flowers, for which there is no evidence in this case,[15] we are not persuaded that Precious Flowers would have been bound by the New York arbitration clause incorporated into the bill of lading, given the terms of the New York arbitration clause.

The New York arbitration clause is not broad, as it provides "[t]hat should any dispute arise between Owners and Charterers, the matter shall be referred to three persons at New York."[16] Contrary to The Rice Company's claim, we do recognize the distinction between a broad and narrow arbitration clause. In Sedco, Inc. v. Petroleos Mexicanos Mexican National Oil Co. (Pemex), we held that an arbitration agreement providing, "Any dispute or difference between the parties arising out of this Charter shall, at the request of either party, be

---

[15] The Rice Company argues that there is not "any dispute that the Vessel ratified the bill of lading and that the Vessel owner is contractually bound to the contract." This is true, but as Precious Flowers argues, "The Rice Company offers no evidence that the vessel's Master would have authorized the bill to be issued for Precious Flowers, versus The Rice Company." The Rice Company correctly points to Lykes Lines Ltd. v. M/V BCC SEALAND, 398 F.3d 319, 325 (5th Cir. 2005), where we held, "'When cargo has been stowed on board the vessel and bills of lading are issued, the bills of lading become binding contracts on the vessel in rem upon the sailing of the vessel with the cargo. The sailing of the vessel constitutes a ratification of the bills of lading. . . .'" (quoting Cactus Pipe & Supply Co., Inc. v. M/V MONTMARTRE, 756 F.2d 1103, 1113 (5th Cir. 1985)). However, Lykes Lines also supports Precious Flowers' argument that, although a bill of lading issues upon the sailing of the vessel and binds the vessel, we cannot know whether the Master would have allowed the bill of lading to be signed on behalf of Precious Flowers. IBN might have signed for itself. We recognized in Lykes Lines that sometimes the "bills of lading are issued without the [M]aster's authority." Id. at 325. Where bills of lading are issued without the Master's authority, we also apply the principle that "when the vessel starts upon the voyage, by implication, there is a ratification and adoption by the ship of the charterer's contract with the shipper," but it does not follow that we assume that the Master provided ratification on behalf of the record owner, as The Rice Company would have us do. Id.

[16] Emphasis added. The Rice Company concedes that the Second Circuit in Import Export Steel Corp. v. Miss. Valley Barge Line Co., 351 F.2d 503, 505-06 (2d Cir. 1965), found a similar clause to be narrow but argues that we should not apply this reasoning.

referred to three arbitrators" was "of the broad type" and that arbitration should apply.[17]  We followed the Second Circuit's holding that

> "[s]imply stated, a court should compel arbitration, and permit the arbitrator to decide whether the dispute falls within the clause, if the clause is 'broad.' In contrast, if the clause is 'narrow,' arbitration should not be compelled unless the court determines that the dispute falls within the clause. Specific words or phrases alone may not be determinative although words of limitations would indicate a narrower clause. The tone of the clause as a whole must be considered."[18]

Even where an arbitration provision is broad, requiring arbitration of "[a]ny and all differences and disputes . . . arising out of this Charter," we have declined to reverse a district court's order to stay arbitration, holding that where a complaint "is not the result of a difference or dispute arising out of the Charter," the parties cannot be compelled to arbitrate.[19]

The New York arbitration clause in the voyage charter applies only to disputes "between Owners and Charterers" and as we have discussed, the term "Owners" in the voyage charter refers to IBN as the disponent owner, not to Precious Flowers as the vessel owner. "Arbitration agreements apply to nonsignatories only in rare circumstances."[20]  Where "some written agreement to arbitrate" exists, federal courts have recognized "[s]ix theories for binding a nonsignatory to an arbitration agreement . . . : (a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing/alter ego; (e) estoppel; and (f) third-party

---

[17] 767 F.2d at 1144-45.

[18] Id. at 1145 n.10 (quoting Prudential Lines, Inc. v. Exxon Corp., 704 F.2d 59, 64 (2d Cir. 1983)).

[19] Texaco, Inc. v. Am. Trading Transp. Co., 644 F.2d 1152, 1154 (5th Cir. Unit A May 1981).

[20] Bridas S.A.P.I.C. v. Gov't of Turkmenistan, 345 F.3d 347, 358 (5th Cir. 2003) (citation omitted).

beneficiary."[21] The Rice Company's argument, generously construed, urges three of these theories. By alleging that Precious Flowers bound itself to the charter party by allowing IBN to sign the bill of lading incorporating the voyage charter terms on its behalf, The Rice Company alleges a combination of incorporation by reference and agency. As we will explain, it also alleges that because the vessel "benefits from any defenses contained in the bill of lading," Precious Flowers is estopped from arguing that it is not subject to the arbitration clause incorporated into the bill of lading.

Bills of lading commonly incorporate charters and bind the signatories to the charter terms.[22] We have found arbitration clauses to be binding even where the terms of incorporation were not entirely clear, but that was when there was no chance that the parties were confused as to whether arbitration would apply.[23] In matters maritime the question of whether nonsignatories may be

---

[21] Hellenic Inv. Fund, Inc. v. Det Norke Veritas, 464 F.3d 514, 517 (5th Cir. 2006) (citing Bridas, 345 F.3d at 355-56).

[22] See, e.g., Cargill Ferrous Int'l v. SEA PHOENIX MV, 325 F.3d 695, 698-99, 705 (5th Cir. 2003) (reversing a district court's denial of a motion to compel arbitration where the "charter party . . . requires all bills of lading issued under the voyage charter to incorporate, among other things, the voyage charter's arbitration clause" and "where there is no confusion concerning who was the charterer or which charter party the bills of lading sought to incorporate"); Cargill Inc. v. Golden Chariot MV, 31 F.3d 316, 318 (5th Cir. 1994) (holding, in a dispute over enforcement of an arbitration clause, that "[a] bill of lading can incorporate a charter party if the bill of lading specifically refers to the charter party"); Steel Warehouse Co., Inc. v. Abalone Shipping Ltd. of Nicosai, 141 F.3d 234, 237 (5th Cir. 1998) (holding that a bill of lading that incorporated "all terms and conditions" of a charter party incorporated the charter party's arbitration clause and bound the parties to the charter party to arbitration).

[23] See, e.g., SEA PHOENIX, 325 F.3d at 704 (holding that even where a "bill of lading did not name the parties to the charter party it was attempting to incorporate, or state the date or place of its making," an arbitration clause was binding, provided there was no confusion as to the parties); Keytrade USA, Inc., 404 F.3d at 896, 897 (holding that "it is clear that the . . . bill of lading refers back to the . . . voyage charter. While that determination would be buttressed if the voyage charter included provisions regarding the incorporation of arbitration . . . the lack of such clauses does not change our fundamental conclusion" and that "there was no confusion as to which charter party the bill of lading sought to incorporate" (citations omitted)).

bound by an arbitration clause incorporated into a bill of lading is seldom reached.

Outside of the maritime context, we have consistently held that where parties have not signed an arbitration agreement, they cannot be compelled to arbitrate. "Who is actually bound by an arbitration agreement is a function of the intent of the parties, as expressed in the terms of the agreement."[24] In Del E. Webb Construction v. Richardson Hospital Authority, a hospital authority contracted with an architect to supervise a construction project. The contract provided for arbitration.[25] The authority signed two other contracts with the construction contractor, and these contracts also contained arbitration clauses.[26] We held that the architect could not be compelled to participate in arbitration between the hospital authority and the construction contractor because the architect and construction contractor had "not agreed to arbitrate disputes between them."[27] In Bridas, an Argentinian energy corporation made an agreement with a Turkemenian production association, which represented the Government of Turkmenistan, to produce hydrocarbon.[28] We held that an arbitral tribunal did not properly exercise jurisdiction over the Government of Turkmenistan where the Government was not a signatory to the contract containing the arbitration clause.[29]

---

[24] Bridas, 345 F.3d at 355.

[25] 823 F.2d 145, 146 (5th Cir. 1987).

[26] Id. at 147.

[27] Id. at 148.

[28] 345 F.3d at 351.

[29] Id. at 351, 363.

At the same time, the core principle that the "FAA does not require parties to arbitrate when they have not agreed to do so"[30] is not offended by principles of agency familiar to the law of contracts. Directly put, where an agent signs a contract requiring arbitration, the principal is bound by the arbitration requirement.[31] That said, the distinction between a general grant of authority to sign on behalf of the Master and a grant that is conditioned by a requirement that the agent sign the bill of lading "without prejudice to the charter party"[32] is self-evident. Where a charter party contains fixture language similar to the language here, providing that "Charterers shall indemnify Owners from all consequences arising out of Master or agents signing Bills of Lading in accordance with Charterers' instructions," the Fourth Circuit has held that the charterer assumes "exclusive responsibility for . . . issuance of bills of lading."[33] Precious Flowers' and IBN's time charter provided that IBN could sign bills of lading "without prejudice" to Precious Flowers and that "Charterers shall indemnify the Owners against all consequences or liabilities which may arise from any inconsistency between this Charter Party and any bills of lading signed by the Charterers or by the Master at their request."

Precious Flowers expressly rejected a New York arbitration clause in its time charter with IBN and opted for a broad London arbitration clause, granting IBN the authority to sign on its behalf only "without prejudice" to Precious

---

[30] Id. at 353 n.3 (quoting Volt Info. Scis, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989)).

[31] See id. at 357.

[32] Keytrade USA, 404 F.3d at 896 n.3.

[33] Yeramex Int'l v. S.S. TENDO, 595 F.2d 943, 947-48 (4th Cir. 1979); cf. Pacific Employers Ins. Co. v. M/V Gloria, 767 F.2d 229, 237-38 (5th Cir. 1985) (distinguishing Yeramex where a charter contained a provision authorizing the charterers or agents to sign on the Master's behalf but did not contain a provision whereby the charterer would indemnify the owner from the consequences of the Master's signing).

Flowers; the voyage charter arbitration clause was not broad and applied only to any "dispute aris[ing] between Owners [IBN, the disponent owners] and Charterers [The Rice Company]," and Precious Flowers limited the authority of agents in signing bills of lading. Together, these circumstances persuade us that the bill of lading did not bind Precious Flowers.[34] The district court did not err in holding that the bill of lading does not bind Precious Flowers to the voyage charter's mandatory arbitration clause.

### IV

Finally, we turn to The Rice Company's claim that if the bill of lading contains any arbitration clause, the in rem vessel and the in personam representative of the vessel must be compelled to arbitrate. The Rice Company similarly alleges that by filing a Claim of Owner for the vessel in its in rem capacity, Precious Flowers is estopped from arguing that it is not subject the arbitration clause.[35] The Rice Company reasons that "[m]aritime law expressly

---

[34] The facts of SEA PHOENIX are somewhat similar to the facts here, but we reached a different result in that case based on several important distinctions. We held that a shipper who had signed the voyage charter and a bill of lading incorporating the arbitration clause of the voyage charter was bound to arbitration. We did not address the question of whether the vessel owner would be bound by the arbitration clause through agency principles. SEA PHOENIX differs substantially from this case because a) the disponent owner/carrier, not the vessel owner, had expressly granted authority to the agent to sign the bill of lading on its behalf, 325 F.3d at 699; b) there were not two conflicting arbitration clauses, id. at 697; c) the party that the court compelled to arbitrate through the terms of the bill of lading was also a party to the voyage charter containing the arbitration clause and had at all times in its possession the relevant bills of lading, id. at 699; and d) a nonsignatory to the voyage charter and the bill of lading was the party that moved to compel arbitration. Id. at 697.

[35] Specifically, The Rice Company argues, "The Vessel in rem is a party to the bill of lading, and any claimant of the vessel must arbitrate on behalf of the Vessel in rem pursuant to the incorporated arbitration clause." Precious Flowers alleges that this is a new argument on appeal. In its motion to compel arbitration before the district court, The Rice Company argued that "the parties are bound to arbitrate this matter, whether or not they are direct or indirect parties to the bills of lading and/or the charter party." Generously construed, this phrase, combined with the motion's discussion of Precious Flowers' in rem Claim of Owner, raised the argument before the district court.

forbids a party from re-litigating issues in an in rem proceeding against a vessel if those issues were decided in a previous arbitration" and that

> [i]mplicit in this prohibition is the requirement that the vessel claimant arbitrate a dispute that is in any way subject to arbitration. Without this implicit requirement, a vessel claimant would be allowed to re-litigate arbitrated issues in subsequent district court litigation.

Adopting this reasoning would compel nonsignatory vessel owners to arbitrate and would violate the principle that "[d]ue to its inherently contractual nature, arbitration may be ordered only for a dispute that the parties have agreed to arbitrate."[36] The Second Circuit case cited by The Rice Company, Thyssen, Inc. v. Calypso Shipping Corp., holds that a party that was properly compelled to arbitrate in personam may not later bring an in rem claim in court to attempt to cure its in personam claim that failed in arbitration.[37] It does not hold that a nonsignatory to an arbitration agreement may be compelled to arbitrate simply because that party brings an in rem claim for the vessel or because a bill of lading with an arbitration clause was issued for the vessel.

As Precious Flowers argues, the in rem proceeding exists so "that the vessel itself can be held liable for a debt that creates a maritime lien."[38] The ship is its own entity in the in rem proceeding,[39] and "the owner bears no personal liability."[40] This is so even where an agent has signed on behalf of the Master

---

[36] Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp., 289 F.3d 373, 376 (5th Cir. 2002).

[37] 310 F.3d 102, 106 (2d Cir. 2002).

[38] Perez & Compania (Catalune), S.A. v. M/V MEXICO I, 826 F.2d 1449, 1451 (5th Cir. 1987).

[39] Bank One La. N.A. v. MR. DEAN M/V, 293 F.3d 830, 832 (5th Cir. 2002).

[40] Perez & Compania, 826 F.2d at 1451.

of the vessel; "[a]lthough signature as agent of the vessel may confer in rem jurisdiction over the vessel once it sets sail with the cargo, it does not confer in personam jurisdiction over the owner."[41] The sailing of the vessel ratifies the bill of lading but does not automatically confer jurisdiction over a vessel owner.[42] Nor does a vessel owner's Claim of Owner automatically subject the owner to in personam jurisdiction.[43]

We have anticipated that arbitration of a portion of a dispute will lead to duplicated efforts and inefficiency if the dispute, once arbitrated, must then be resolved in court with nonsignatory parties.[44] But we have held that "any

---

[41] Asarco, Inc. v. Glenara, Ltd., 912 F.2d 784, 786-87 (5th Cir. 1990). An agent's signature may confer in personam jurisdiction over the vessel owner if there is an indication that the owner gave actual or apparent authority to a particular agent to sign on its behalf, and that agent then signed the bill of lading. See id. at 786. The charterer for whom the agent would have signed the bill of lading had it issued is unclear. Even where a case presents us with a letter of agency, wherein a Master had given permission to a specific agent to sign on his behalf, we have declined to determine "the charterer on whose behalf . . . bills of lading were issued." Cactus Pipe, 756 F.2d at 1106 n.1. And where a designated agent has in fact signed a bill of lading, if the charterer, not the owner, has directed the cargo to a destination, Asarco suggests that a court may not have personal jurisdiction over the vessel owner. See Asarco, 912 F.2d at 786 (Where a vessel is under the control of a charterer rather than an owner and "sailed only on orders from its charterers," the owner has not agreed or contracted to deliver cargo to a certain destination).

[42] Id.

[43] See Cactus Pipe, 756 F.2d at 1108, 1112 (Where a vessel owner filed a Claim of Owner, this was sufficient to confer in rem jurisdiction but not in personam jurisdiction). Although the facts of Cactus Pipe are distinguishable from the present case, as the vessel owner had not given agents authority to sign on behalf of the Master in Cactus Pipe, the case is relevant to our analysis. As we have discussed, Precious Flowers has successfully argued that it is unclear whether agents would have signed the bill of lading on behalf of Precious Flowers or the charterer, IBN. Even assuming the agents had signed on behalf of Precious Flowers and thus bound Precious Flowers to the terms of the bill of lading, Precious Flowers granted agency authority to sign only "without prejudice" to Precious Flowers.

[44] Tai Ping Ins. Co., Ltd. v. M/V Warschau, 731 F.2d 1141, 1142-43 (5th Cir. 1984). In Tai Ping, a vessel owner time chartered a vessel to a carrier, and the time charter contained an arbitration clause. The carrier voyage chartered the vessel to a corporation. The corporation sued the vessel owner and carrier in federal court, and the carrier filed a cross-claim against the vessel owner. As a result, arbitration was required between the owner and the carrier but not the corporation.

inconvenience or duplication of effort is a consequence of having agreed to arbitrate."[45]  Specifically, "duplication of effort, redundant testimony, and the possibility of inconsistent findings . . . are the risks that parties to an arbitration clause must be considered to have contemplated at the time they struck their bargain."[46]  "'The relevant federal law requires piecemeal resolution when necessary to give effect to an arbitration agreement.'"[47]  This is so "'notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement,'" meaning that parties subject to arbitration will have to re-litigate issues with non-parties.[48]

Although this result may be inconvenient to The Rice Company, we may not force Precious Flowers, as an in rem or in personam complainant or Defendant, into an arbitration agreement that Precious Flowers didn't sign.  It is the case that Precious Flowers, by bringing a Claim of Owner and arguing defenses under COGSA and the common law after The Rice Company filed a complaint with the federal district court in Houston, did not avail itself of the benefits of the vessel's bill of lading before litigation commenced.[49]  The district court did not err in so finding and in holding that direct benefit estoppel did not apply.

AFFIRMED.

---

[45] Id. at 1144 n.4.

[46] Id. at 1145 (internal quotations omitted).

[47] Sedco, 767 F.2d at 1147 n. 19 (quoting Dean Witter Reynolds v. Byrd, 470 U.S. 213 (1985)).

[48] Id. at 1148 (quoting Tai Ping, 731 F.2d at 1146).

[49] See, e.g., Hellenic Inv. Fund, Inc., 464 F.3d at 518.  In Hellenic, we held that where a nonsignatory party benefits from a contract during the life of a contract, it cannot later repudiate portions of the contract in litigation.  In the present case, as in Bridas, "'the [non-signatory] . . . has not sued [the signatory] . . . under the agreement.'" Id. (quoting Bridas, 345 F.3d at 362).